THE STATE OF OHIO, APPELLEE, *v.* BELL, APPELLANT.

(No. 76-499—Decided December 22, 1976.)

274

*Mr. Simon L. Leis, Jr.,* prosecuting attorney, *Mr. Robert Hastings, Jr.,* and *Mr. William P. Whalen, Jr.,* for appellee.

*Mr. H. Fred Hoefle* and *Mr. Thomas A. Luken,* for appellant.

PAUL W. BROWN, J. Appellant Bell raises ten propositions of law. The first three of these assert that Ohio's statutory scheme for the imposition of the death penalty is unconstitutional. That issue was decided by this court in *State* v. *Bayless* (1976), 48 Ohio St. 2d 73, and need not be reconsidered here. Those propositions of law are overruled.

Appellant asserts in his fourth proposition of law that

he was unconstitutionally coerced into waiving his right to trial by jury by the provisions of R. C. 2929.03(C)(1), (2) and (E) which provide that if a defendant is tried by jury and convicted, then the trier of fact at the mitigation hearing is the one trial judge who presided over the jury trial; but, if the defendant is tried by a three-judge panel following a waiver of a jury trial, then the trier of fact at the mitigation hearing is the same three-judge panel.

Appellant contends that this statutory scheme coerces defendants, and coerced him, into waiving their right to trial by jury. Before a three-judge panel can impose the death penalty, it must unanimously find that the defendant has failed to establish the existence of one or more of the mitigating circumstances enumerated in R. C. 2929.04(B). Thus, if tried before a panel, a defendant need convince only one judge out of three that such mitigation existed. If, however, a defendant elects a jury trial, he must convince the sole trial judge at the penalty proceedings that a mitigating circumstance existed. Appellant asserts that this scheme impels defendants to select trial by panel, rather than by jury, because the dread of the death sentence is an overwhelming consideration.

A statutory scheme which deliberately or unintentionally chills the right to trial by jury cannot constitutionally be tolerated. Appellant relies on *United States* v. *Jackson* (1968), 390 U. S. 570, in which the United States Supreme Court held that a federal statute had such an impermissible chilling effect because it allowed the death penalty in kidnapping cases where trial was by jury, but did not permit the death penalty where trial was by the court.

However, unlike the statute in *Jackson*, the death penalty is possible under the Ohio statute under both alternatives, and it may be avoided under both alternatives. Thus, we are confronted with only the arguably greater possibility of the avoidance of the death penalty by the requirement of unanimity within the panel, and not with its absolute avoidance as in *Jackson*.

Although appellant asserts that there is a greater pos-

sibility of convincing one of three judges on a panel of a mitigating factor than one judge alone, by the same logic, there is also a greater possibility of convincing one or more of 12 jurors of the absence of evidence of guilt beyond a reasonable doubt than so convincing one of three judges. If the first consideration inclines against a jury trial, then the latter inclines toward one. The balance struck by these competing considerations is for the judgment of the defendant and competent trial counsel.

As noted, this statutory scheme furnishes a choice for defendants. Presumably, if no choice were offered, coercion would not be alleged by appellant. We see nothing unreasonable or coercive in the statute: there are pros and cons with respect to each alternative. If a defendant feels uncomfortable with a jury as the trier of fact at trial and the trial judge as the trier of fact at the mitigation hearing, then he may elect a three-judge panel as the trier of fact for all the proceedings. We see nothing objectionable in providing the defendant with a choice, absent, of course, an allegation of ineffective trial counsel. No such allegation was here made.

Further, the Court of Appeals concluded from statistics in Hamilton County that, in actual practice, this statutory scheme does not coerce or impel a defendant to waive jury trial. We are presented with no contrary evidence. Appellant's fourth proposition of law is overruled.

Appellant asserts in his fifth proposition of law that a statement by a juvenile cannot be used against him at trial unless both he and his parents or guardian were informed of his *Miranda* constitutional rights, and unless the minor was given the opportunity to consult with his parents, guardian or attorney as to whether he should waive those rights.

Appellant cites Indiana case law and apparently concedes that this proposition has no support in Ohio authorities. We decline his invitation to alter existing Ohio law. We perceive no requirement in *Miranda* that the parents of a minor shall be read his constitutional rights along with

their child, and that, by extension, both parent and child are required to intelligently waive those rights before the minor makes a statement. Appellant's mother was given every opportunity to be with her son, and, after declining, her presence cannot be forced by police.

When a minor is sought to be interrogated, the question of whether he intelligently and voluntarily waives his rights cannot always be decided by the same criteria applied to mature adults. See *Haley* v. *Ohio* (1948), 332 U. S. 596; *In re Gault* (1967), 387 U. S. 1. Such criteria necessarily varies with certain factors as the age, emotional stability, physical condition, and mental capacity of the minor. Appellant was adjudicated competent to stand trial as an adult, and thus is not afforded as much protection as. a very young or disabled child who is not as capable of intelligently waiving his rights.

We are impressed with the meticulous care with which the police approached appellant's rights. Appellant was advised of his rights three times, and, the last time, was asked whether he understood them. He indicated that he did, and signed a waiver of those rights. Appellant was informed further by the officer that he could have his mother present while making his statement, but he indicated he did not wish her present. The officer nonetheless phoned appellant's mother and informed her that her son was being held for involvement in a homicide, an armed robbery and a kidnapping, and asked further if she would like to be present when her son gave a statement. The officer offered her transportation to and from police headquarters; but she declined this offer along with the opportunity to be present at the interrogation. After being informed of this conversation, appellant again declined to have his mother present when he gave his statement.

Upon review of the record, we find that the prosecution satisfied its burden of proving that the inculpatory statement by the minor appellant was made pursuant to an intelligent and voluntary waiver of his constitutional rights of which he was fully advised, giving due regard to

the requirement that a minor be given even more scrupulous attention to the issues of voluntariness and understanding than an adult. Appellant's fifth proposition of law is overruled.

In his sixth proposition of law, appellant asserts that a juvenile's statement is involuntary and may not be used against him if both he and his parents or guardian have not been advised that he may suffer the death penalty with the use by the prosecution of the statement, and if he and his parents or guardian have not been advised that he may lose the protection of the Juvenile Court.

We find this proposition without merit. Appellant has cited no authority from any jurisdiction that supports it. The officer related to appellant's mother all of his knowledge at that point: that appellant was being held in connection with a homicide, a kidnapping and an armed robbery. Any further advice by the officer concerning the death penalty or Juvenile Court would have been pure, and perhaps improper, speculation since appellant had not yet given his statement. Accordingly, the sixth proposition of law is overruled.

Appellant argues in his seventh proposition of law that one who participates in an armed robbery and a kidnapping is not guilty of aggravated murder where the other participant takes the victim out of his presence and deliberately kills him, absent evidence of the first participant's purpose to kill, or that he aided and abetted the actual slaying with the intent that the victim die.

Clearly there is ample evidence that appellant affirmatively assisted and acted to complete the murder. Appellant's denial could be reasonably disbelieved after considering all relevant circumstances, especially that Hall was arrested the next day with a would-be victim in the trunk and appellant following in another car, presumably attempting to carry out the same scheme of murder.

The foregoing evidence is sufficient to sustain a finding of guilt because, under R. C. 2923.03(A)(2) and (F), one who aids and abets another in committing an offense

is guilty of the crime of complicity, and may be prosecuted and punished as if he were the principal offender.

But, in this capital case, this proposition need not be overruled solely on the above grounds. The panel was not required to accept appellant's version of the murder. As the trier of fact, it was within the province of the panel to determine which was the credible evidence. Thus, the gist of appellant's seventh proposition is that the conviction of aggravated murder was contrary to the manifest weight of the evidence. Upon review of the entire record, we hold that there was ample credible evidence from which the panel could have concluded that appellant actively participated in the murder. Appellant's own statement confirms his involvement in the kidnapping and the armed robbery, and concedes further that, after he drove into the cemetery, he asked Hall what was going to be done next. The court could reasonably disbelieve, as we do, that Graber lay quietly with his hands behind his head while Hall left him alone to return to his car to reload his shotgun. Evidence of bruises on Graber's body, appellant's statement to police, the physical circumstances of the slaying, and the testimony of the eyewitness Pierce all would have justified the panel's rejection of appellant's version and its conclusion that Bell either committed, or actively assisted in, the murder. The seventh proposition of law is therefore overruled.

Appellant in his eighth proposition of law contends that where the prosecutor fails to advise the defense counsel of the names, addresses and criminal records of witnesses after proper discovery requests, the trial court should not permit those witnesses to testify over objection, or, alternatively, should grant motions to strike such testimony. This proposition is not well taken. The record shows that in most instances the prosecution did not have such information, but orally communicated the information to defense counsel as it was acquired. The trial court carefully examined the possibility of prejudice to appellant, and concluded that no such prejudice existed. This proposition of law is overruled.

Appellant asserts in his ninth proposition of law that a minor is "mentally deficient" within the meaning of R. C. 2929.04(B)(3), and therefore cannot be sentenced to death after a conviction of aggravated murder with specifications. The Revised Code does not define "mental deficiency"; therefore, unless usurped by a judicial definition, the term must be accorded its common, everyday meaning, keeping in mind that the statutory language defining mitigating circumstances must be strictly construed against the state and liberally construed in favor of the accused. See R. C. 2901.04(A).

However, we do not agree that a minor is *per se* "mentally deficient" within the meaning of R. C. 2929.04(B)(3). Such an intention by the General Assembly could have easily been provided for by clear and simple language. Upon review of the statute, we do not believe the General Assembly intended that a 17-year-old defendant is conclusively "mentally deficient." The ninth proposition of law is overruled.

In his tenth proposition of law, appellant alternatively argues that even if a minor is not *per se* "mentally deficient," for purposes of R. C. 2929.04(B)(3), the circumstances of this case establish by a preponderance of the evidence that the offense was a product of his mental deficiency, and that the imposition of the death penalty was error.

In considering this proposition, we will not limit ourselves, as appellant has, to the mitigating circumstances of mental deficiency. R. C. 2929.04(B) states:

"Regardless of whether one or more of the aggravating circumstances listed in division (A) of this section is specified in the indictment and proved beyond a reasonable doubt, the death penalty for aggravated murder is precluded when, considering the nature and circumstances of the offense and the history, character, and condition of the offender, one or more of the following is established by a prepondence [*sic*] of the evidence:

"(1) The victim of the offense induced or facilitated it.

"(2) It is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation.

"(3) The offense was primarily the product of the offender's psychosis or mental deficiency, though such condition is insufficient to establish the defense of insanity."

The purpose of mitigation is to recognize that the punishment assigned for a criminal act may, for ethical and humanitarian reasons, be tempered out of consideration for the individual offender and his crime. *State* v. *Woods* (1976), 48 Ohio St. 2d 127. The belief no longer prevails that every offense in a like legal category calls for an identical punishment without regard to the past life and habits of a particular offender. *Williams* v. *New York* (1949), 337 U. S. 241, 247.

We will examine each of the three mitigating circumstances provided for in R. C. 2929.04(B) to determine if the evidence established that such a mitigating factor existed.

We need not spend much time or effort, though, in discussing R. C. 2929.04(B)(1) as there was no evidence whatsoever that the victim induced or facilitated the crime.

However, the two remaining mitigating circumstances merit consideration. It has been alleged that the mitigating circumstances under R. C. 2929.04(B) are unconstitutionally narrow because a number of very important factors, such as the age and criminal record of the defendant, appear to be irrelevant under the statute. We believe, however, that the Ohio statutory scheme can withstand this attack. The Ohio statutes, properly construed, permit the trial judge or panel to consider these factors at the mitigation hearing. Such a statutory construction is evident as R. C. 2929.04(B) states that "the death penalty * * * is precluded when, considering the nature and circumstances of the offense *and the history, character, and condition of the offender*" (emphasis added), one or more of the mitigating circumstances is established. This conclusion is buttressed by the requirement that these statutory provisions be liberally construed in favor of the accused.

As used in R. C. 2929.04(B)(2), the terms "duress"

and "coercion" are to be construed more broadly than when used as a defense in criminal cases. See *State* v. *Woods* (1976), 48 Ohio St. 2d 127.

There was evidence in the psychiatric reports that appellant was perhaps easily led by Hall. When combined with appellant's age, it is conceivable that all characteristics could establish the mitigating circumstance defined by R. C. 2929.04(B)(2). However, we believe the panel was justified and correct in finding that this mitigating circumstance was not established by the evidence. Even if it were believed that appellant was apprehensive of Hall and was "forced" to go along with the crimes, the hard fact remains that appellant could have very easily quit the scheme while following in another car. Further, it must be remembered that appellant and Hall were engaged in the same type of scheme the very next day when Hall was arrested. We agree with the panel that, after considering all relevant factors, the second mitigating circumstance was not established.

The third and final mitigating circumstance in the statute concerns the offender's psychosis or mental deficiency. While rejecting appellant's claim that a minor defendant is *per se* "mentally deficient," we do hold that a defendant's age is a primary factor in determining the existence of a mental deficiency. Senility, as well as minority, may well be relevant, and therefore properly considered, in determining whether the offense was a product of mental deficiency.

The sum of the evidence and testimony of the psychiatrists, psychologists, probation department, school authorities and others fails to sustain appellant's position that he suffered from a mental deficiency. Appellant's situation was unpleasant but not unfamiliar: an unsatisfactory home, absence of family or other supervision, drug involvement, and inability to cope with school demands. Even when considered together with defendant's minority, all the factors do not establish a "mental deficiency" for purposes of R. C. 2929.04(B)(3). Although appellant's environment was in-

deed undesirable, such conditions do not excuse or even mitigate aggravated murder. To hold otherwise would set a dangerous and misleading precedent for future defendants. We therefore agree with the panel and the court below that the aggravated murder was not the product of appellant's psychosis or mental deficiency, and therefore overrule appellant's tenth proposition of law.

Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'Neill, C. J., Herbert, Corrigan, Stern, Celebrezze and W. Brown, JJ., concur.