**In re GOINS.**

[Cite as *In re Goins* (1999), 137 Ohio App.3d 158.]

Court of Appeals of Ohio,
Twelfth District, Clinton County.

No. CA99–04–011.

Decided Nov. 22, 1999.

**160**

*William E. Peelle,* Clinton County Prosecuting Attorney, and *Geoffrey J. Bradley,* Assistant Prosecuting Attorney, for appellant, state of Ohio.

*John S. Porter,* for appellee, Steven A. Goins.

VALEN, Judge.

In an accelerated appeal, plaintiff-appellant, the state of Ohio, appeals the decision of the Clinton County Court of Common Pleas, Juvenile Division, suppressing incriminating statements made by eleven-year-old defendant-appellee, Steven A. Goins. We reverse and remand the case for further proceedings consistent with this opinion.

On March 17, 1999, six-year-old Joel G. ("the victim") informed his aunt, Carolyn Goins, that appellee had sexually abused him. Appellee and the victim are cousins and reside in the same household with their families in Wilmington, Ohio. As a result, appellee's mother, Goins, called the Clinton County Sheriff's Office and subsequently both families went to the Clinton County Children Services Board ("CCCSB"), where a child-abuse investigator, Deputy Chris Lester, and a CCCSB caseworker, Stephanie Newkirk, conducted an investigation and obtained a written confession from appellee.

On March 18, 1999, Lester filed a complaint alleging that appellee was a delinquent child for committing one count of rape in violation of R.C. 2907.02(A)(1)(b), an act which if committed by an adult would constitute a first-degree felony. The complaint alleged that appellee had performed fellatio on the victim.

On March 24, 1999, appellee filed a motion to suppress all verbal and written statements made by him to law enforcement officers. The trial court held a hearing on the motion on April 7, 1999.

At the suppression hearing, Lester testified that on March 17, 1999, the two families arrived at CCCSB at approximately 5:00 p.m. Lester testified that appellee remained in the lobby and played while he and Newkirk interviewed the victim and his family.

Lester testified that at approximately 6:00 p.m., he went over the *Miranda* form with appellee in the presence of his mother and Newkirk for approximately ten to fifteen minutes. Lester testified that appellee told him that he could read and write. Lester testified that he told appellee that he was not under arrest and that he could stop talking at any time. Lester testified that he reviewed each *Miranda* right individually with appellee and his mother. After reviewing each individual right, Lester stated that he asked appellee and his mother if they each understood the right. If either appellee or his mother indicated that he or she did not understand, Lester testified, he explained the right until they understood it. When appellee and his mother acknowledged that they understood the right, Lester had them initial that right. Appellee and his mother then signed the *Miranda* waiver form.

Lester testified that he informed appellee again that he did not have to talk to him and that he could stop talking at any time. Appellee's mother testified that Lester's testimony was an accurate account of the events that took place at the time she and appellee were informed about appellee's constitutional rights. Appellee's mother further testified that she understood the *Miranda* rights when she initialed the *Miranda* form. Appellee testified that Lester read and explained his rights to him and he knew what "silent" meant.

Appellee and his mother testified that they consented to her being excluded from the interview. Lester testified that his reason for excluding appellee's mother from the interview was for appellee's comfort level, based upon his previous experiences in conducting interviews with children. The interview lasted approximately thirty minutes, and appellee confessed to sexual conduct with the victim during the interview.

Before taking a written statement, Lester testified, he obtained consent from appellee and appellee's mother. The written statement took approximately fifteen to twenty minutes to complete. Lester then placed appellee under arrest at 7:37 p.m. when appellee's mother indicated that appellee had no other place to stay other than their home, where the victim also resided.

Appellee testified that Lester informed him that he could stop talking at any time. Appellee stated that he knew his interview with Lester was based upon the incident with the victim. Appellee testified that he was not sure if he wanted his mother present during the interview. Appellee further testified that Lester told him twice that he was lying during the interview.

In its April 14, 1999 decision and entry, the trial court granted appellee's motion to suppress, finding that the state had failed to meet its burden to prove by a preponderance of the evidence the understanding and voluntariness of appellee's waiver of his *Miranda* rights. Appellant appeals this decision, raising a single assignment of error:

"The trial court erred when it granted appellee's motion to suppress his oral and written statements where there is no evidence that such statements were involuntarily induced."

Appellant argues that the totality of the circumstances does not support the trial court's finding that appellee's statements were involuntary where the finding was based primarily upon appellee's age.

In reviewing a motion to suppress, an appellate court may not disturb a trial court's decision where it is supported by substantial, credible evidence. *In re Howard* (1997), 119 Ohio App.3d 33, 41, 694 N.E.2d 488, 493, citing *Maumee v. Johnson* (1993), 90 Ohio App.3d 169, 171, 628 N.E.2d 115, 116. A trial court serves as the trier of fact in a suppression hearing and must weigh the evidence and judge the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, 981–982, citing *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 57–58, 437 N.E.2d 583, 584–585. An appellate court accepts the trial court's factual findings and relies upon the trial court's ability to assess the credibility of witnesses, but thereafter independently determines, "without deference to the trial court, whether the court has applied the appropriate legal standard." *State v. Anderson* (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034, 1036.

In reviewing whether a confession is voluntary, we must determine (1) whether appellee voluntarily, knowingly, and intelligently waived his *Miranda* rights; and (2) whether appellee's statements were voluntary. *State v. Clark* (1988), 38 Ohio St.3d 252, 261, 527 N.E.2d 844, 854.

In finding that a defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights, "a reviewing court is required to consider the totality of the circumstances to determine whether (1) the waiver was a voluntary exercise of will rather than the product of intimidation or coercion; and (2) the defendant was fully aware of the nature of his right and the consequences of his decision to waive it." *In re Smalley* (1989), 62 Ohio App.3d 435, 445, 575 N.E.2d 1198, 1204, citing *Moran v. Burbine* (1986), 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410, 420–421. See, also, *State v. Dailey* (1990), 53 Ohio St.3d 88, 91–92, 559 N.E.2d 459, 462–464. The totality of the circumstances includes "the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *In re Watson* (1989), 47 Ohio St.3d 86, 90, 548 N.E.2d 210, 214. "Waivers by minors must be scrutinized closely since the validity of the waiver is affected by the factors of age, emotional stability and mental capacity." *Smalley* at 445, 575 N.E.2d at 1204, citing *State v. Bell* (1976), 48 Ohio St.2d 270, 277, 2 O.O.3d 427, 431, 358

N.E.2d 556, 562, sentence vacated (1978), 438 U.S. 637, 98 S.Ct. 2977, 57 L.Ed.2d 1010.

■ As a threshold matter, "coercive police activity is a necessary predicate to finding that a confession is not voluntary within the Fifth Amendment, on which *Miranda* was based." *State v. Dailey* (1990), 53 Ohio St.3d 88, 91–92, 559 N.E.2d 459, 463, citing *Colorado v. Connelly* (1986), 479 U.S. 157, 170, 107 S.Ct. 515, 523, 93 L.Ed.2d 473, 486–487. Without police coercion, circumstances such as the defendant's minority or low I.Q. do not negate the voluntariness of the confession. *Id.* at 92, 559 N.E.2d at 463–464 "The voluntariness of a waiver of this privilege has always depended on the absence of police overreaching not on 'free choice' in any broader sense of the word." *Id.* at 92, 559 N.E.2d at 463, citing *Moran*, 475 U.S. at 421, 106 S.Ct. at 1141, 89 L.Ed.2d at 420–421.

■ The record is devoid of any suggestion that Lester engaged in any coercive behavior.[1] Appellee does not assert that at any point in the proceedings he was mistreated or involuntarily induced into waiving his *Miranda* rights. As noted by the trial court, there was no evidence of any overt actions by Lester which were intended to intimidate appellee and no evidence of any physical deprivation or inducement, and the length, intensity and frequency of the interrogation were reasonable.

Although appellee was eleven and three-quarters years old with no prior criminal experience at the time of his *Miranda* waiver, there is nothing in the record to suggest that he was of insufficient intelligence based upon his age or that he is mentally impaired and was unable to understand the nature of the waiver. Appellee stated that he could read and write. Appellee's testimony indicates that he is capable of understanding the meaning of "silent" and that he understood his constitutional rights. At the suppression hearing, the following exchange occurred between the prosecutor and appellee.

"Q. Okay. Let's look at this [*Miranda*] form for a bit, shall we? Alright. [*Sic.*] You said you knew what the first one was?

"A. Yes.

"Q. Read it to me?

"A. To remain silent.

"Q. What does that mean?

---

1. At the suppression hearing, the court stated that "[t]here is no question, the Court has no doubt that the officer acted in good faith. There is apparently no motive for trickery, I don't find any bad purposes or intent in the manner in which the interview * * * was conducted, or the manner in which the *Miranda* warning was given."

"A. To not say anything.

"Q. To not say anything? So what's does [*sic*] that – what does that mean when you read that?

"A. Like, be quiet.

"* * *

"Q. Okay, how about the rest? When you talked to him did you tell him you didn't know what that meant?

"A. No.

"Q. Did you talk to him?

"A. I told him that I didn't understand it.

"Q. Well, did he just go on and go to number three?

"A. No. I guess he sort of explained it."

The record shows that Lester took great care to ensure that appellee and his mother understood appellee's constitutional rights and that they chose to continue the interview voluntarily and without an attorney. The presence of appellee's mother is a factor that tends to show that the waiver was voluntary. *Smalley,* 62 Ohio App.3d at 445, 575 N.E.2d at 1203–1204.

■ "The Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of his Fifth Amendment privilege." *Colorado v. Spring* (1987), 479 U.S. 564, 574, 107 S.Ct. 851, 857, 93 L.Ed.2d 954, 966. Although appellee testified that he knew the interview was based upon the incident with the victim, the trial court found it important that neither appellee nor his mother was advised of the seriousness of the offense for which appellee might be charged. However, a suspect's awareness of all the possible consequences of questioning in advance of interrogation is not relevant to determining whether the suspect voluntarily, knowingly, and intelligently waived his *Miranda* rights. See *State v. Campbell* (1994), 69 Ohio St.3d 38, 46, 630 N.E.2d 339, 348–349. See, also, *Spring* at 574, 107 S.Ct. at 857–858, 93 L.Ed.2d at 965–966. Under the totality of the circumstances, we find that appellee voluntarily, knowingly, and intelligently waived his *Miranda* rights.

■ We now turn to whether appellee's statements were voluntary after he waived his *Miranda* rights. *Clark,* 38 Ohio St.3d at 261, 527 N.E.2d at 854. Evidence of an "inherently coercive tactic" by the police, such as physical abuse, threats, or deprivation of food, medical treatment, or sleep during an interrogation is required for a finding that a confession is not voluntary. *State v. Cooey* (1989), 46 Ohio St.3d 20, 28, 544 N.E.2d 895, 907–908; see, also, *Connelly,* 479

U.S. at 167, 107 S.Ct. at 521–522, 93 L.Ed.2d at 484–485; see, also, *In re Taylor* (Mar. 29, 1995), Lorain App. No. 93CA005650, unreported, 1995 WL 134754.

The trial court suppressed appellee's statements based upon its speculation that appellee would feel intimidated by the process of interrogation, and therefore his rights became illusory when his mother left the room. The court's decision is not based upon any substantial, credible evidence that Lester's conduct intimidated appellee [2] or that appellee lacked sufficient understanding [3] of his constitutional rights. We have previously found that a juvenile defendant has no right to have his mother present at any stage of the interrogation process. *Howard,* 119 Ohio App.3d at 44, 694 N.E.2d at 495. See, also, *Watson,* 47 Ohio St.3d at 89, 548 N.E.2d at 213–214. The Fifth Amendment is not concerned with moral and psychological pressures to confess emanating from sources other than official coercion. *Dailey,* 53 Ohio St.3d at 92, 559 N.E.2d at 463–464.

As previously discussed, the record is devoid of any evidence of coercive police conduct, and the record supports the conclusion that appellee sufficiently understood his *Miranda* rights. Appellee was questioned only once for approximately thirty minutes. Although appellee seemed a little shy and leaned forward with his head down during questioning, appellee also appeared relaxed, talked easily, and was very cooperative. Before appellee gave a written statement, Lester obtained consent from appellee and appellee's mother. The entire interrogation process, including appellee's waiver of his *Miranda* rights, was completed in one hour and thirty-seven minutes. Appellee never indicated at any time that he wanted a lawyer or his mother. Although appellee testified that Lester accused him of lying, these statements are permissible admonitions to tell the truth. *Cooey,* 46 Ohio St.3d at 28, 544 N.E.2d at 907–908.

Our review of the record reveals no evidence that Lester engaged in any inherently coercive police conduct to render appellee's confession involuntary.

---

2. At the conclusion of the suppression hearing, the court stated that "[t]he problem that the Court has in this case and that the reason the Court is going to sustain the motion to suppress was when the child was separated for purposes of the interview and I can understand and * * * I believe the officer was very sincere about the comfort level; nevertheless, the right to speak up to assert those rights which the child indicated that they understood at that time, this Court believes those rights may be more likely to be freely asserted by a parent on behalf of a child than the child who on first experience with law enforcement may have been too bashful or timid to—and this is speculative—to assert those rights and to say, you know, I don't want to talk anymore * * * the flaw for this Court in this Court's judgment was in separating the youth from the mother for purposes of this interview, even though that was apparently with their consent."

3. The court stated that "there's no indication about the child's grade level, his ability to understand more complex things." However, the *Miranda* form indicates that appellee has a sixth-grade education.

We find that the trial court's decision that appellee's constitutional rights became illusory without his mother being present during interrogation is not supported by substantial, credible evidence. See *Howard,* 119 Ohio App.3d at 41, 694 N.E.2d at 493. Accordingly, we find that appellee's confession was voluntary. The state's sole assignment of error is well taken and is sustained.

The judgment is reversed, and the cause is remanded to the trial court for further proceedings.

*Judgment reversed*
*and cause remanded.*

POWELL, P.J., and WALSH, J., concur.