OPINION
{¶ 1} Appellant, M.D., appeals the decision of the Madison County Court of Common Pleas, Juvenile Division, denying his motion to suppress in a vandalism case.
 {¶ 2} By complaint filed in the juvenile court, 13-year-old M.D. was charged as a delinquent child for breaking and entering in violation of R.C. 2911.13 and vandalism in violation of R.C.2909.05(A). The charges stemmed from an incident that occurred on April 12, 2003 wherein appellant and a friend broke into and vandalized a residence on Chickasaw Drive in London, Ohio owned by Timothy Becker. At the time of the incident, the house was being remodeled and was therefore unoccupied.
 {¶ 3} In the late evening of April 12, 2003, a neighbor called Becker and told him someone was in his house on Chickasaw Drive. This was not the first time the house had been broken into. In fact, the day before, the remodeling contractor had seen two juveniles leaving the house and going to appellant's yard. At the time, appellant and his parents lived next door to Becker's house. Becker went to his house where he met Deputy Tina Perry of the Madison County Sheriff's Office. They found the doors of the walk-out basement wide open; they also found a broken basement window with blood around the broken glass. Inside the house, they found a considerable amount of fresh vandalism, including symbols and a cartoon figure painted on the floors, ceiling, and walls. In fact, the "mist of spray paint was still hanging in the air." They also found a broken Bacardi bottle and cigarette butts.
 {¶ 4} At that point, Deputy Perry went back to her cruiser at the front of the house to get a report form, while Becker, an off duty Columbus police officer, went outside to look around. While outside, Becker noticed a Bacardi bottle sitting next to the sliding door of appellant's walk-out basement. The bottle was a duplicate of the one found broken in Becker's house. Becker walked to the rear of his backyard. From there, he observed appellant and another juvenile come out of appellant's basement. Appellant "appeared to be looking to see if the deputy was gone, looking between the houses." Becker approached the juveniles with a flashlight and asked to see their hands for potential weapons. Appellant, who "appeared to be very nervous," had a fresh bleeding cut, which he said was caused by a knife. Becker, however, believed it was too jagged to be a knife wound.
 {¶ 5} Upon finding out that appellant's parents were not home, Becker requested that appellant accompany him to the front of the house where Deputy Perry's car was, approximately 120 feet away. Becker put appellant's right arm behind his back, and holding onto appellant's wrist, Becker escorted him and the other juvenile to the deputy's cruiser. Becker released appellant about 15 feet away from the cruiser. Becker never identified himself to the juveniles. Further, although he believed he was "acting under the authority of a citizen who was a victim of a felony crime," Becker never told appellant he was under arrest.
 {¶ 6} As Becker and the juveniles approached her cruiser, Deputy Perry called for assistance. At the time, the officer had been a deputy for only 90 days. The juveniles were put in the back of the cruiser. Within a few minutes, Deputy Jeffrey Linsker of the Madison County Sheriff's Office arrived at the scene. Deputy Linsker did not recognize the juveniles in the cruiser. Apparently, at that point, Deputy Linsker asked questions to the juveniles who denied any wrongdoing. After talking to Becker and Deputy Perry, Deputy Linsker examined the vandalism in the house. In the basement, the deputy observed Doral cigarette butts on the floor. The deputy then went back to the cruiser where he again questioned the juveniles.
 {¶ 7} Upon realizing that Deputy Perry had not checked the juveniles for weapons, Deputy Linsker patted down both juveniles. Doral cigarettes were found in appellant's pocket. At that point, believing something was amiss, Deputy Linsker read appellant hisMiranda rights. Appellant then confessed being in the residence and doing some of the damage. He was then put under arrest and placed back in the cruiser. Both deputies testified that until after he was patted down, appellant was not under arrest. Deputy Perry also testified that until then, the questions were not interrogational but simply to gather information. Deputy Linsker testified appellant understood what a Miranda warning was.
 {¶ 8} Appellant was eventually taken to the Madison County Sheriff's Office where Deputy Perry read him his Miranda
rights. Deputy Perry explained to appellant that he had the right to an attorney, and had him read over a Miranda waiver. Deputy Perry testified that appellant (1) then signed the waiver "free and willingly," (2) showed remorse after writing his confession, and (3) never asked questions about the waiver. Appellant never asked for an attorney or his parents. Appellant's father came to pick up his son a few hours after he was contacted.
 {¶ 9} Appellant's version of the facts differs somewhat from the testimony of the officers. Appellant testified he walked out of his basement after noticing a stranger (Becker) walking in his parents' backyard with a flashlight. Appellant denied knowing a police cruiser was next door. Other than asking appellant to show his hands, Becker never said a word to appellant. As they started walking to Deputy Perry's cruiser, appellant yelled at his friend for assistance. Appellant testified that when they were in the cruiser, Deputy Linsker yelled at them and threatened to "dead shoot" them "if I ever see you back in that guy's yard again." Deputy Linsker denied threatening to shoot appellant. In contrast to both deputies' testimony, appellant denied he was read hisMiranda rights at the scene. Appellant further claimed that Deputy Perry did not read him his Miranda rights until after he signed the waiver. Appellant believed he had to sign the waiver.
 {¶ 10} Appellant moved to suppress evidence on the grounds that (1) his arrest by Becker was an invalid citizen arrest, (2) the deputies did not have probable cause to arrest and search him, (3) he was not read his Miranda rights prior to his custodial interrogation at the scene, and (4) his confession at the police station was not voluntary. The juvenile court denied the motion. On November 5, 2003, following his no contest plea, appellant was adjudicated a delinquent child. This appeal follows.
 {¶ 11} In his sole assignment of error, appellant argues that the juvenile court erred by denying his motion to suppress. Appellant raises four sub-issues under his assignment of error.
 {¶ 12} When considering a motion to suppress evidence, the trial court serves as the trier of fact and is the primary judge of the weight of the evidence and the credibility of witnesses.State v. Fanning (1982), 1 Ohio St.3d 19, 20. This court, when reviewing a trial court's decision on a motion to suppress, accepts the trial court's findings if they are supported by competent, credible evidence, and relies upon the trial court's ability to assess the credibility of witnesses. State v.McNamara (1997), 124 Ohio App.3d 706, 710. An appellate court, however, reviews de novo whether the trial court applied the appropriate legal standard to the facts. State v. Anderson
(1995), 100 Ohio App.3d 688, 691.
 Citizen arrest {¶ 13} Appellant argues that his arrest by Becker was not a valid citizen arrest under R.C. 2935.04 because Becker did not (1) inform appellant of his intention to arrest him and the cause of the arrest in violation of R.C. 2935.06, or (2) take him to a judge, clerk of court, or magistrate, or deliver him to an officer authorized to execute criminal warrants in violation of R.C. 2935.07.
 {¶ 14} R.C. 2935.04 states that "[w]hen a felony has been committed, or there is reasonable ground to believe that a felony has been committed, any person without a warrant may arrest another whom he has reasonable cause to believe is guilty of the offense, and detain him until a warrant can be obtained." Before we can find that there was an invalid arrest under R.C. 2935.04, it must first be demonstrated that there was in fact an arrest by Becker.
 {¶ 15} R.C. 2935.01, while defining critical terms in R.C. Chapter 2935, the Ohio arrest statute, does not define "arrest." However, the Ohio Supreme Court has held that an arrest occurs when the following four requisite elements are met: "(1) an intent to arrest, (2) under a real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so intended by the person arrested."State v. Barker (1978), 53 Ohio St.2d 135, 139, certiorari denied, 439 U.S. 913, 99 S.Ct. 285.
 {¶ 16} Upon a thorough review of the record, we find that Becker did not manifest an intent to arrest appellant. Becker never identified himself as a police officer. While he believed he was "acting under the authority of a citizen who was a victim of a felony crime," he never told appellant he was under arrest. He simply detained and escorted appellant to Deputy Perry's cruiser. Becker testified he did this based on evidence linking appellant to the break in of Becker's house, the fact that appellant's parents were not home, and the presence of Deputy Perry a short distance away. Thus, Becker's actions indicate only an intent to detain appellant until he released him to Deputy Perry. Based on the foregoing, we find that Becker did not arrest appellant.
 The deputies' lack of probable cause to arrest and search appellant {¶ 17} Appellant argues that once he was released to Deputy Perry and put in the back of her cruiser, he was under arrest and in custody. Appellant contends that this arrest was unlawful as Deputy Perry did not have, at that time, probable cause to believe appellant had committed an offense, especially since she never asked any questions to Becker before putting appellant in the cruiser. Likewise, appellant argues that Deputy Linsker's search of appellant's person was unlawful and pretextual.
 {¶ 18} Appellant's first argument assumes he was arrested and in custody the moment he was put in the cruiser before Deputy Linsker's arrival. However, this court has held that an arrest does not occur every time an individual is placed in the back of a police cruiser. State v. Haines, Clermont App. No. CA2003-02-015, 2003-Ohio-6103, ¶ 13. This is true when the individual is being requested to stay while relevant facts are being ascertained. Confining an individual to the police cruiser is not a custodial placement if it is part of the investigation, even if the suspect in the police cruiser is not free to leave. Id. The record shows that the juveniles were put in the cruiser while the deputies were performing an on-scene inquiry as part of the normal fact-finding process. Both deputies also testified that until appellant was patted down, he was not under arrest. We therefore find that at that time, appellant was detained only for investigation purposes and that he was not under arrest.
 {¶ 19} A law enforcement officer may search an individual for weapons without probable cause if the officer has "specific and articulable facts which, along with rational inferences therefrom, justify the search." State v. Riddle (1995),104 Ohio App.3d 679, 682. The standard is whether a reasonably prudent person would be warranted in believing that his or her safety is jeopardized. Id. The officer need not be absolutely certain that the individual is armed. Id.
 {¶ 20} Appellant argues that the search of his person was unlawful because since he had already been secured in a cruiser for quite awhile without resistance, Deputy Linsker was clearly looking for evidence, not weapons. We disagree. It is undisputed that Deputy Perry did not search the juveniles for weapons before putting them in her cruiser. However, that evening, she only had been a deputy for 90 days and was therefore still inexperienced. After viewing the extensive vandalism in the house, Deputy Linsker discovered that Deputy Perry had not patted down the juveniles. Deputy Linsker testified he then patted down the juveniles because he "was real concerned that they're sitting in the back of her cruiser and nobody has checked them for weapons or anything." Deputy Linsker's testimony he patted down appellant for weapons as a safety precaution was unrebutted. In light of the foregoing, we find that the search of appellant's person was not unlawful.
 Appellant's custodial interrogation at the scene {¶ 21} Appellant argues that the juvenile court erred by finding he was given Miranda warnings before he confessed at the scene. Appellant contends that he was under arrest and in custody the moment he was placed in the cruiser after Becker released him. Therefore, he should have been read his Miranda
rights then.
 {¶ 22} We have already held that although not free to leave, appellant was not under arrest when he was put in the cruiser before Deputy Linsker's arrival. It is well-established thatMiranda warnings only apply when an interrogation occurs.State v. Knuckles, 65 Ohio St.3d 494, 496, 1992-Ohio-64, certiorari denied (1993), 508 U.S. 981, 113 S.Ct. 2986. An interrogation, as conceptualized in Miranda v. Arizona (1966),384 U.S. 436, 86 S.Ct. 1602, must reflect a measure of compulsion above and beyond that inherent in custody itself before it will be considered a "custodial interrogation." Rhode Island v.Innis (1980), 446 U.S. 291, 300, 100 S.Ct. 1682; State v.Tucker, 81 Ohio St.3d 431, 435, 1998-Ohio-438. The duty to advise a suspect of his constitutional rights arises only when questioning by law enforcement officers rises to the level of a custodial interrogation. State v. Gumm, 73 Ohio St.3d 413, 429,1995-Ohio-24, certiorari denied (1996), 516 U.S. 1177,116 S.Ct. 1275.
 {¶ 23} General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process ordinarily does not constitute a custodial interrogation. Miranda, 384 U.S. at 477,86 S.Ct. 1602. That is because such general questioning is only an attempt to elicit basic facts relative to the officer's investigation. See State v. Rivera-Carrillo, Butler App. No. CA2001-03-054, 2002-Ohio-1013.
 {¶ 24} We find that Miranda warnings were not required until after Deputy Linsker discovered cigarettes in appellant's pocket during the pat down. Although appellant was not free to leave, Deputy Linsker's questions to appellant and his friend until the pat down were merely on-the-scene inquiries done as part of the normal fact-finding process. The questioning by the deputy did not therefore constitute custodial interrogation. Nor was appellant's placement in the cruiser as part of the investigation a custodial placement. The juvenile court did not err by finding appellant was read his Miranda rights before his confession at the scene.
 Appellant's confessions {¶ 25} Finally, appellant argues that the totality of the circumstances does not support the juvenile court's finding that his confession at the scene or at the sheriff's office was voluntary, especially considering his young age, the fact he was scared and shaky during the ordeal, and the fact that being respectful of authority, he thought he had to answer questions or he would get into more trouble.
 {¶ 26} In reviewing whether a confession is voluntary, we must determine whether appellant voluntarily, knowingly, and intelligently waived his Miranda rights, and whether appellant's statements were voluntary. In re Goins (1999),137 Ohio App.3d 158, 162. A reviewing court is required to consider the totality of the circumstances to determine whether (1) the waiver was a voluntary exercise of will rather than the product of intimidation or coercion, and (2) the defendant was fully aware of the nature of his right and the consequences of his decision to waive it. Id. The totality of the circumstances include "the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." Id.
 {¶ 27} As a threshold matter, "coercive police activity is a necessary predicate that a confession is not voluntary within the Fifth Amendment, on which Miranda was based." Id. at 163. Without coercion, circumstances such as a defendant's minority do not negate the voluntariness of the confession. Id. "The voluntariness of a waiver of this privilege has always depended on the absence of police overreaching not on `free choice' in any broader sense of the word." State v. Dailey (1990),53 Ohio St.3d 88, 92. Likewise, a juvenile's confession is not rendered involuntary where the juvenile does not have either a parent or an attorney present. In re Watson (1989), 47 Ohio St.3d 86, 89.
 {¶ 28} After reviewing the totality of the circumstances surrounding appellant's confession at the scene and at the sheriff's office, we find that the confession was voluntarily given after appellant knowingly and intelligently waived his right to counsel and his right to remain silent. Although appellant was 13 and three-quarters years old with no prior criminal experience at the time of his confession at the scene or at the sheriff's office, there is nothing in the record to suggest he was of insufficient intelligence based upon his age or that he was mentally impaired and was unable to understand hisMiranda rights.
 {¶ 29} Deputies Perry and Linsker both testified appellant was advised of his rights after the pat down. Deputy Linsker testified that when he read appellant his Miranda rights, he asked him if he watched the television show "COPS" as a way to see if appellant had any knowledge of Miranda warnings. Deputy Linsker was comfortable appellant understood what a Miranda
warning was. After appellant was taken to the sheriff's office, Deputy Perry read him his Miranda rights, explained to him he had the right to an attorney, and had him read over a Miranda waiver. Deputy Perry testified she believed appellant understood what his rights were. Appellant did not ask any questions about the Miranda waiver or indicate he was confused. Appellant never asked for an attorney or his parents.
 {¶ 30} Finally, the record contains no evidence of physical deprivation, mistreatment, or threatening or inducing behavior by police. We are mindful of appellant's testimony that Deputy Linsker threatened him at the scene by telling him he would dead shoot him. However, the deputy denied threatening appellant. We are also mindful of appellant's testimony he was scared and shaky during the ordeal and that he believed he had to answer police questions. However, the record shows that although scared, appellant nearly fell asleep in the cruiser at the scene, and did sleep at the sheriff's office while waiting for his parents. In addition, this court must also give great weight to the findings of the trial judge below who had the chance to observe the demeanor of appellant and to hear him testify. See In re Toler
(May 4, 1983), Preble App. No. 314.
 {¶ 31} Upon thoroughly reviewing the record, and based on the totality of the circumstances, we cannot say that the juvenile court erred by finding appellant's confession to be voluntary. The juvenile court therefore did not err by denying appellant's motion to suppress. Appellant's sole assignment of error is overruled.
 {¶ 32} Judgment affirmed.
Powell and Walsh, JJ., concur.