OPINION
{¶ 1} Delinquent child-appellant, Michael G. McDonald, appeals the decision of the Lake County Court of Common Pleas, Juvenile Division, finding that McDonald did commit the offenses of Aggravated Menacing, a misdemeanor of the first degree in violation of R.C. 2903.21, Ethnic Intimidation, a felony of the fifth degree in violation of R.C. 2927.12, and Criminal Trespass, a misdemeanor of the fourth degree in violation of R.C. 2911.21(A)(1). McDonald also challenges the denial of his motion to suppress evidence. For the following reasons, we affirm the decision of the court below. *Page 2 
 {¶ 2} On the evening of August 26, 2004, Tishani Terrell was helping her aunt, Sylvia Spikes, move into a newly-purchased home on Magnolia Drive, in Mentor, Ohio. At the time, Spikes was the only African-American living on Magnolia Drive. Terrell arrived at her aunt's home at about a quarter to midnight and parked her vehicle in the driveway. Sometime after midnight, Terrell went back outside to retrieve some items from her vehicle. Terrell noticed a box on the drive by the rear, passengers-side door of her vehicle. Terrell picked the box up and carried it toward her aunt's house. The box was a cardboard box from McDonald's Restaurant, approximately eight by twelve inches, and was covered with blue tape and notes. Underneath the porch light, Terrell read one of the notes with the message "to the Niggers." The other note contained the message, "Go back to Africa you drug dealing goril[l]a looking son of a bitch ass nigger * * * your friends the K.K.K."
 {¶ 3} Terrell dropped the box and ran into her aunt's house, yelling that there was a box outside with KKK on it. Spikes described her niece as crying and hysterical. Terrell's mother and Spikes' children and a nephew were also inside the house. Spikes immediately telephoned the Mentor police and waited inside with her family. A bomb technician was called in to open the package.
 {¶ 4} The incident was investigated by Mentor Police Detective James Collier. Detective Collier's investigation focused on McDonald as a neighborhood resident who worked at a nearby McDonald's Restaurant.
 {¶ 5} On February 2, 2005, Collier questioned McDonald at Mentor High School. In the course of the interview, McDonald admitted to leaving the box in Spikes' driveway. Collier also obtained a written confession from McDonald, although there is *Page 3 
conflicting testimony as to whether the written statement was obtained at Mentor High School or, on a latter date, at the Mentor Police Station.
 {¶ 6} On March 10, 2005, McDonald was charged with one count of Aggravated Menacing, Menacing, Criminal Mischief, Criminal Trespass, and three counts of Ethnic Intimidation.
 {¶ 7} On July 27, 2005, McDonald filed a motion to suppress the statements made to Detective Collier. The juvenile court denied McDonald's motion on October 7, 2005, following a suppression hearing.
 {¶ 8} On November 19, 2005, a trial was held in juvenile court at which McDonald did not testify. On December 5, 2005, the court found that McDonald did commit Aggravated Menacing, the correlating offense of Ethnic Intimidation, and Criminal Trespass. On January 17, 2006, the court imposed a suspended commitment to the Ohio Department of Youth Services, placed McDonald on community control, ordered him to be held in the juvenile detention facility for 90 days on each count, with early release provisions, and ordered him to complete a number of assignments addressing the issues of racial prejudice involved in the case.
 {¶ 9} McDonald timely appeals and raises the following assignments of error.
 {¶ 10} "[1.] The trial court erred to the prejudice of the defendant-appellant in denying his motion for acquittal made pursuant to Crim.R. 29(A).
 {¶ 11} "[2.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.
 {¶ 12} "[3.] The trial court erred to the prejudice of the delinquent child-appellant when it denied his motion to suppress which resulted in a violation of his constitutional *Page 4 
rights to due process and against self-incrimination as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution."
 {¶ 13} We shall first consider McDonald's third assignment of error, challenging the denial of his motion to suppress.
 {¶ 14} At a suppression hearing, the trial court acts as the trier of fact. State v. Brown, 100 Ohio St.3d 51, 2003-Ohio-5059, at ¶ 15, citingState v. Mills (1992), 62 Ohio St.3d 357, 366. As the trier of fact, the trial court must evaluate the evidence and judge the credibility of the witnesses. Mills, 62 Ohio St.3d at 366, citing State v. Fanning (1982),1 Ohio St.3d 19, 20; Brown, 2003-Ohio-5059, at ¶ 15 ("[w]e therefore defer to the trial court's ruling regarding the weight and credibility of witnesses"). "The court of appeals is bound to accept factual determinations of the trial court made during the suppression hearing so long as they are supported by competent and credible evidence."State v. Searls (1997), 118 Ohio App.3d 739, 741. Accepting the trial court's determination of the factual issues, the court of appeals must conduct a de novo review of the trial court's application of the law to those facts. Id.; State v. Hines, 11th Dist. No. 2004-L-066,2005-Ohio-4208, at ¶ 14.
 {¶ 15} Statements obtained during the custodial interrogation of a defendant are not admissible at trial unless the police have used procedural safeguards to secure the defendant's Fifth Amendment right against self-incrimination. Miranda v. Arizona (1966), 384 U.S. 436,444. Essential to the preservation of this right, the defendant must be advised, prior to custodial interrogation, of his right to remain silent and to have legal counsel present at interrogation. Id. at 467-470. The purpose of providing the *Page 5 
Miranda warnings is to inform suspects, in a reasonable manner, of the rights secured by the Fifth Amendment. State v. Farris,109 Ohio St.3d 519, 2006-Ohio-3255, at ¶ ¶ 17-18 (citations omitted).
 {¶ 16} In the present case, it is undisputed that Detective Collier informed McDonald of his Miranda rights prior to questioning him at Mentor High School and that McDonald stated that he understood them. Accordingly, then, our inquiry focuses on whether McDonald's statements to Collier were voluntarily made. Dickerson v. United States (2000),530 U.S. 428, 444 ("[t]he requirement that Miranda warnings be given does not, of course, dispense with the voluntariness inquiry").
 {¶ 17} "[T]he state carries the burden of proving the voluntariness of a confession by a preponderance of the evidence." State v. Hill,64 Ohio St.3d 313, 317, 1992-Ohio-43. However, "[c]ases in which a defendant can make a colorable argument that a self-incriminating statement was `compelled' despite the fact that the law enforcement authorities adhered to the dictates of Miranda are rare." Dickerson,530 U.S. at 444, quoting Berkemer v. McCarty (1984), 468 U.S. 420, 433 n. 20.
 {¶ 18} "In deciding whether a juvenile's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; and the existence of physical deprivation or inducement." In re Watson (1989),47 Ohio St.3d 86, at paragraph one of the syllabus, citing State v.Edwards (1976), 49 Ohio St.2d 31, paragraph two of the syllabus. "A suspect's decision to waive his Fifth Amendment privilege against compulsory self-incrimination is made voluntarily absent evidence that his will was overborne and his capacity for self-determination was *Page 6 
critically impaired because of coercive police conduct." State v.Dailey (1990), 53 Ohio St.3d 88, paragraph two of the syllabus. "The voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on `free choice' in any broader sense of the word." Colorado v. Connelly (1986), 479 U.S. 157, 170. "In the absence of any police coercion resulting in [a suspect's] confession, * * * age and low I.Q., standing alone, do not negate the voluntariness of his statement." Dailey, 53 Ohio St.3d at 92.
 {¶ 19} McDonald argues that, under the totality of the circumstances, his confession was not voluntary but was the result of psychological pressure and improper influence. McDonald was seventeen at the time of his interview with Collier and had previously been in trouble with the law. McDonald relies on testimony that he was escorted out of class by a uniformed police officer/security guard and taken to a small, windowless room to be questioned by Collier. Apart from the occasional presence of the school security guard, McDonald was left alone with Collier. McDonald testified that he did not believe that he was free to leave the room and that he made several requests to call his parents which were refused.
 {¶ 20} McDonald describes himself as a "learning disabled juvenile" who attends special classes at Mentor High School for "slow learners."
 {¶ 21} We disagree that any of these factors rendered McDonald's confession involuntary. Collier's interview with McDonald lasted less than an hour. Collier did not threaten McDonald, deprive him of physical comfort, or make any sort of improper inducements to obtain McDonald's statement. Collier testified that he had spoken with McDonald about the incident earlier in the investigation while Collier was interviewing *Page 7 
neighborhood residents. McDonald cooperated with Collier by admitting what he had done and provided an explanation and apology for his actions. Collier terminated the interview when it was time for McDonald to take the bus to his afternoon work-study program. Collier gave McDonald his card and a few days later McDonald and his parents voluntarily went to see Collier at the police station. There is simply no evidence of coercive conduct on Collier's part overwhelming McDonald's will and capacity for self-determination.
 {¶ 22} McDonald may have felt intimidated by the room, or Collier's presence, or the possibility of going to jail. However, there is no evidence that these circumstances were calculated to coerce a confession from McDonald. Moreover, McDonald was advised of his Miranda rights and affirmed that he understood them.[1] McDonald never asked to leave the office or to speak with an attorney and never refused to talk with Collier. The absence of McDonald's parents at the time of questioning does not render a confession involuntary, but is merely one factor to consider. Watson, 47 Ohio St.3d at 89-90.
 {¶ 23} As to McDonald's unspecified learning disability, there is no evidence that Collier should have been aware of this disability or that this disability had any effect on McDonald's decision to make a statement. McDonald was in the tenth grade, could read and write English without handicap, and was employed. *Page 8 
 {¶ 24} Considering the totality of the circumstances in which McDonald was interviewed, the trial court did not err in determining that McDonald's confession was voluntary. There are many cases in which juvenile confessions have been held voluntary and admissible involving juveniles much younger than McDonald and in circumstances much more intimidating. In re M.D., 12th Dist. No. CA2003-12-038, 2004-Ohio-5904, at ¶ 28 (juvenile was 13 years old, had no prior criminal experience, and was interviewed at the scene of the crime and at the sheriffs office); In re W.J.L., 2nd Dist. No. 2003 CA 81, 2004-Ohio-3787, at ¶ 11 (juvenile was "nearly 17" years old, had no prior criminal experience, and was interviewed at the police station); In re Hill, 10th Dist. No. 03AP-82, 2003-Ohio-6185, at ¶ 11 (juvenile was 15 years old and interviewed at a correctional facility with several officers present); In re Moran (Feb. 16, 2000), 5th Dist. No. 99CA017, 2000 Ohio App. LEXIS 568, at *6-*7 (juvenile was 14 years old, attended "slow learning" classes, had no prior criminal experience, and was interviewed at the sheriffs office).
 {¶ 25} The third assignment of error is without merit.
 {¶ 26} McDonald's first and second assignments of error challenge the juvenile court's decision on the grounds of sufficiency and manifest weight of the evidence.
 {¶ 27} The Ohio Rules of Criminal Procedure provide that a defendant may move the trial court for a judgment of acquittal "if the evidence is insufficient to sustain a conviction." Crim.R. 29(A). "`Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury," i.e. "whether the evidence is legally sufficient to support the jury verdict as a matter of law."State v. *Page 9 Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52, quoting, Black's Law Dictionary (6 Ed.1990), 1433. Essentially, "sufficiency is a test of adequacy," that challenges whether the state's evidence has created an issue for the jury to decide regarding each element of the offense. Id.
 {¶ 28} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979),443 U.S. 307, 319; State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at *14. In reviewing the sufficiency of the evidence to support a criminal conviction, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Jenks,61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 29} Weight of the evidence, in contrast to its sufficiency, involves "the inclination of the greater amount of credible evidence."Thompkins, 78 Ohio St.3d at 387 (emphasis sic) (citation omitted). Generally, the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact to determine. State v.Thomas (1982), 70 Ohio St.2d 79, at syllabus. When reviewing a manifest weight challenge, however, the appellate court sits as the "thirteenth juror." Thompkins, 78 Ohio St.3d at 387 (citation omitted). The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses, to *Page 10 
determine whether, "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id., quoting State v. Martin (1983), 20 Ohio App.3d 172,175.
 {¶ 30} In order to find that McDonald had committed the crime of Aggravated Menacing, the State was required to prove, beyond a reasonable doubt, that McDonald "knowingly cause[d] another to believe that [he would] cause serious physical harm to the person * * * or a member of the other person's immediate family." R.C. 2903.21(A). A person acts knowingly "when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C.2901.22(B). In order to find that McDonald had committed the crime of Ethnic Intimidation, the State was required to prove, beyond a reasonable doubt, that McDonald committed the crime of Aggravated Menacing "by reason of the race, color, religion, or national origin of another person * * *." R.C. 2927.12(A).
 {¶ 31} McDonald argues that the State failed to prove two elements of Aggravated Menacing: 1) that he knowingly caused Spikes and Terrell to believe that he would cause physical harm and 2) that Spikes and Terrell believed that they would suffer physical harm.
 {¶ 32} As to the first argument, McDonald relies on his statement to Collier that he left the box as a "prank" and because some members of the Spikes family "are involved in drug-dealing in the Lake County area, and he did not want that to happen on his street, and he was afraid for his sisters." McDonald maintains that this evidence *Page 11 
does not support a finding that McDonald intended Spikes or Terrell to fear for their safety. We disagree.
 {¶ 33} Regardless of McDonald's professed motivation for the prank, the undisputed evidence is that McDonald left a box with threatening and intimidating messages on Spikes' property in the middle of the night. Although the messages did not expressly threaten harm, they evidenced racial hostility toward Spikes and referenced the Ku Klux Klan, an organization known for committing acts of violence against African Americans. Clearly, the messages were intended to cause Spikes to believe that there was something harmful in the box. Moreover, McDonald's statement to Collier evidences an intent to cause fear in the Spikes' family. McDonald stated that he did not want that family living in his neighborhood because of his belief the family was involved with drug dealing. The juvenile court could reasonably infer from this evidence that McDonald intended to make Spikes afraid to live in this neighborhood.
 {¶ 34} As to the second argument, McDonald asserts that Spikes and Terrell never testified as to what was the object of their fears. This omission is immaterial. The undisputed evidence is that Terrell began to cry and become hysterical upon reading the messages on the box. She immediately dropped the box, ran inside, and told Spikes to call the police. At this point, Spikes gathered her family together and waited there for the police to arrive because they were "all scared." This conduct is consistent with the conduct of people in fear for their safety. The cause of the fear was the box and messages left by McDonald.
 {¶ 35} Based on this evidence, the trier of fact could conclude, beyond a reasonable doubt, that McDonald intended to make Spikes and Terrell believe he would *Page 12 
cause them serious physical harm and that Spikes and Terrell actually believed they would suffer serious physical harm. Accordingly, there was sufficient evidence that McDonald committed the crimes of Aggravated Menacing and Ethnic Intimidation. Since the testimony evidencing McDonald's intent in leaving the box, and Spikes and Terrell's reaction to receiving the box, is uncontradicted, the adjudication of true for Aggravated Menacing and Ethnic Intimidation is not against the manifest weight of the evidence.
 {¶ 36} In order to find that McDonald had committed the crime of Criminal Trespass, the State was required to prove, beyond a reasonable doubt, that McDonald, "without privilege to do so, * * * [k]nowingly enter[ed] or remain[ed] on the land or premises of another." R.C.2911.21 (A) (1 ).
 {¶ 37} McDonald maintains that there was no evidence that he was physically on Spikes' property. Thus, it was possible that McDonald could have thrown the box onto the property from the public road. We disagree.
 {¶ 38} The evidence is undisputed that the box was found on Spikes' property next to Terrell's car, which was parked in Spikes' driveway. Although Terrell was uncertain how far from the road the box was located, she did testify that "the road wasn't right there where the box was" and that "the closest house * * * from where the box was [found] was my aunt's house." It is a reasonable inference, based on this evidence, that McDonald entered Spikes' property to place the box on her driveway. Thus, the adjudication is supported by sufficient evidence.
 {¶ 39} Although it is also possible to infer from this evidence that McDonald tossed the box onto Spikes' property, we consider this inference much less reasonable *Page 13 
than the one reached by the trier of fact. Thus, the adjudication for Criminal Trespass is not against the manifest weight of the evidence.
 {¶ 40} McDonald's first and second assignments of error are without merit.
 {¶ 41} For the foregoing reasons, the decisions of the Lake County Court of Common Pleas, Juvenile Division, finding that McDonald did commit the offenses of Aggravated Menacing, Ethnic Intimidation, and Criminal Trespass, and denying his motion to suppress the evidence, are affirmed.
CYNTHIA WESTCOTT RICE, P.J., concurs,
COLLEEN MARY OTOOLE, J., dissents.
[1] We note that several courts have held that questioning a juvenile is not custodial interrogation merely because it occurs in a school and in the presence of a police officer. See In re Haubeil, 4th Dist. No. 01CA2631, 2002-Ohio-4095, at ¶ 16 ("the act of law enforcement officers questioning minors while they are at school does not amount to custodial interrogation where there is no evidence that the student was under arrest or told he was not free to leave"); In re Bucy (Nov. 6, 1996), 9th Dist. No. 96CA0019, 1996 Ohio App. LEXIS 4842, at *4-*5; In reJohnson (June 20, 1996), 5th Dist. No. CA-95-13, 1996 Ohio App. LEXIS 2972, at *3-*4. The issue of whether Collier's interview with McDonald constituted custodial interrogation is not before us since, in this case, Collier advised McDonald of his Miranda rights. According to McDonald's testimony, he believed he would be arrested because Collier advised him of his rights. *Page 1