OPINION
Appellant, fifteen-year-old John Howard, appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, adjudicating him delinquent by reason of having committed criminal acts which if committed by an adult would constitute rape and felonious sexual penetration in violation of R.C. 2907.02 and 2907.12, respectively.
In May 1996, four-year-old Katie Caudill informed her mother that her genital area was red and hurting because her brother, Bobby, "wouldn't leave it alone." Katie has four brothers: Bobby, who is seven years old; Josh, who is ten years old; Christopher, who is eleven years old; and Casey, who is fifteen years old. Mrs. Caudill confronted each of the boys about Katie's comment and discovered that Katie had been sexually abused by her brothers. Mrs. Caudill also discovered, based upon her conversations with Katie's brothers, that appellant and Scott Tindle ("Tindle"), a fifteen-year-old relative of the Caudills, were present when Katie was molested and participated in the sexual abuse.
As a result of Mrs. Caudill's discovery, the Butler County Children Services Board ("BCCSB") and the Oxford Police Department became involved. Detective Dwight Johnson interviewed all of the Caudill children individually and obtained a written statement from appellant. Following Johnson's investigation, a delinquency complaint was filed against appellant alleging that he had committed acts of sexual abuse upon Katie and her five-year-old cousin, Tiffany Miller.
On June 14, 1996, the state filed a motion seeking permission to allow the child victims to testify by closed circuit television from outside of the courtroom pursuant to R.C.2151.3511. The motion indicated that if the child victims were to testify in front of appellant, they would suffer serious emotional trauma and would not be able to communicate regarding the allegations due to extreme fear. On July 9, 1996, appellant filed a motion to suppress any and all statements made by him to any investigating police officer, including his written confession. The trial court overruled appellant's motion to suppress and subsequently permitted Katie, Tiffany, Bobby and Josh to testify via closed circuit television at the adjudication hearing.[1]
Following the hearing, appellant was adjudicated delinquent by reason of the trial court finding that he had sexually abused Katie and Tiffany. The trial court found that appellant was guilty of the rape of Katie and felonious sexual penetration of Tiffany. The trial court ordered appellant to be placed in the custody of the Department of Youth Services for a minimum period of twelve months and a maximum period not to exceed his twenty-first birthday. It is from this judgment that appellant now appeals, setting forth the following assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY APPLYING R.C. 2151.3511 IN VIOLATION OF HIS 6TH AND 14TH AMENDMENT RIGHTS TO CONFRONT WITNESSES.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY MISAPPLYING R.C. 2151.3511.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY OVERRULING HIS MOTION TO SUPPRESS HIS CONFESSION.
Assignment of Error No. 4:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY CONVICTING HIM OF FELONIOUS SEXUAL PENETRATION AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In his first assignment of error, appellant contends that the trial court erred by applying R.C. 2151.3511 in violation of hisSixth and Fourteenth amendment rights to confront witnesses. Appellant argues that the trial court's failure to enter case-specific findings of fact that Katie, Tiffany, Bobby, and Josh would experience significant trauma if they were required to testify in court in appellant's presence, prior to allowing their out-of-court testimony by closed circuit television, violated his right to confront his accusers.
The Sixth Amendment to the United States Constitution guarantees the accused in a criminal prosecution the right "to be confronted with the witnesses against him." Likewise, the Ohio Constitution provides that in any trial, the accused must be permitted:
 to meet the witnesses face to face * * *; but provision may be made by law for the taking of the deposition by the accused or by the state, to be used for or against the accused, of any witness whose attendance can not be had at the trial, always securing to the accused means and the opportunity to be present in person and with counsel at the taking of such deposition, and to examine the witness face to face as fully and in the same manner as if in court.
Section 10, Article I, Ohio Constitution.
While a face-to-face confrontation between an accused and the witnesses against him is an important component of a criminal proceeding, such confrontation is not "an indispensable element of the Sixth Amendment's guarantee of the right to confront one's accusers." Maryland v. Craig (1990), 497 U.S. 836, 849-850,110 S.Ct. 3157, 3165-3166; see, also, State v. Self (1990), 56 Ohio St.3d 73,77. A physical face-to-face encounter is not required in cases where the "denial of such confrontation is necessary to further an important public policy and * * * the reliability of the testimony is otherwise assured." Id. at 850, 110 S.Ct. at 3166, citing Coy v. Iowa (1988), 487 U.S. 1012, 1021, 108 S.Ct. 2798,2803; Self, 56 Ohio St.3d at 77. The protection of child sexual abuse victims is an important public policy recognized in Ohio. State v. Eastham (1988), 39 Ohio St.3d 307, 310. Thus, the state's interest in protecting the well-being of child sexual abuse victims may, under certain circumstances, override an accused's right to confront the accusers in court. Craig,497 U.S. at 853, 110 S.Ct. at 3167.
A special procedure designed to allow a child sexual abuse victim to testify at trial through closed circuit television is permissible if the state proves the necessity of such a procedure. Id. at 855, 110 S.Ct. at 3169. The necessity determination must be made on a case-by-case basis after the court has heard evidence on the issue, and the court must find not only that the child victim would suffer trauma due to the presence of the accused, but that the emotional stress from which the child would suffer would be significant. Id. at 855-856,110 S.Ct. 3169.
R.C. 2151.3511(C) provides for the testimony of a child sex offense victim by closed circuit television. "R.C. 2151.3511
applies only when the accused is a child and the victim is a child under the age of eleven years." In re Burchfield (1988),51 Ohio App.3d 148, 153. The statute further provides as follows:
 For purposes of divisions (C) and (D) of this section, a juvenile judge may order the testimony of a child victim to be taken outside of the room in which a proceeding is being conducted if the judge determines that the child victim is unavailable to testify in the room in the physical presence of the child charged with the violation due to one or more of the following circumstances:
* * *
 (2) The inability of the child victim to communicate about the alleged violation because of extreme fear, failure of memory, or another similar reason;
 (3) The substantial likelihood that the child victim will suffer serious emotional trauma from so testifying.
R.C. 2151.3511(E). When the trial court determines whether or not to allow the testimony of a child victim in accordance with R.C.2151.3511, the court "shall enter the determination and findings on the record in the proceeding." R.C. 2151.3511(F)(2).
Dr. Sherry Baker, a psychologist with the Children's Diagnostic Center in Hamilton, testified that, in general, a child may experience trauma when testifying in front of the alleged perpetrator and that such trauma would overwhelm the child's ability to cope. Baker stated that a child who is highly traumatized would re-experience the trauma by talking about it in front of the perpetrator. In addition, Baker testified that a child who was forced to observe sexual abuse upon another child can have problems discussing the observations in front of the alleged perpetrator. According to Baker, "simply being exposed to abuse can have the same effect as experiencing it." Baker then began discussing Katie in particular, however the remainder of the testimony was not recorded. In a supplementation of the record submitted by appellant and appellee, the parties agreed that Baker recommended that Katie have no contact with appellant as a result of her determination that Katie had been sexually abused by multiple people.
Casey Caudill testified that he forced his younger brothers, through the use of threats, to perform and observe sexual acts upon Katie. Christopher Caudill testified that he is very afraid of Casey and that Casey told him that he would hurt him if he told about anything that he had seen. Christopher also testified that he was afraid of appellant and was afraid that appellant would try to hurt him.
Josh Caudill testified that Casey had threatened him and told him not to tell about any of the things he had seen. Josh testified that Casey "was like taking up [speaking for] for the whole group," which included himself, appellant, and Tindle, and that Casey threatened both him and his brother Bobby. Josh stated that he was very afraid of Casey and that Casey had cut his (Josh's) arm and throat. Josh also stated that Casey had thrown a knife at Christopher which became lodged in Christopher's ankle. Josh stated that on one occasion he announced that he was going to "tell" about the sexual abuse and that Casey shoved him into a broken windowsill where a protruding nail cut his arm.
Bobby Caudill testified that he was handcuffed to a bedpost and forced to watch as Casey and appellant raped Katie. Bobby testified that Casey threatened him with a knife and told him that if he told anyone about what had happened, Casey would kill him. Bobby also stated that appellant threatened him and said that appellant would kill him if he told anyone. Bobby stated that he was very scared and afraid to tell anyone about what had happened. Bobby testified that he is afraid of appellant because appellant told him that he was going to kill him when he gets out of the detention center.
The record indicates that the state's motion requesting that Katie, Tiffany, Christopher, Bobby, and Josh be permitted to testify via closed circuit television was discussed prior to the adjudication hearing. Specifically, during the adjudication hearing, in response to an objection by defense counsel, the court stated:
 BY THE COURT: Is that what you're going to * * * is this one of the witnesses you indicated * * * you talked about in pre-trial[2] that * * * you mean she's not an alleged victim today?
 Q. [Prosecutor] Oh, no. No. Tiffany's an alleged victim and she's one of the victim of * * *.
Furthermore, prior to the commencement of the closed circuit television testimony, the court sustained defense counsels' objections to the televised testimony of Christopher Caudill because he was eleven years old when the complaint against appellant was filed. See R.C. 2151.3511. However, as to the other child witnesses, the court stated:
 BY THE COURT: And Katie, obviously is to both clients. So Bobby and Josh, as the Court indicated, we would permit the testimony to take place that way [via closed circuit television] and reserve that issue for the Court of Appeals if necessary.
Although the record indicates that the closed circuit television testimony issue was discussed at a pretrial conference and the trial court's final determination of the matter is contained in the record during the adjudication hearing, the trial court did not enter findings related to its determination that Katie, Tiffany, Bobby, and Josh would be permitted to testify by two-way closed circuit television as required by R.C. 2151.3511(F)(2). Therefore, the trial court erred.
It is our belief, however, that the trial court's error is harmless under the circumstances of this case. After carefully reviewing the record, we can find no evidence indicating that any of appellant's substantial rights were materially prejudiced by the trial court's failure to enter findings on the record. The record contains sufficient evidence to support the trial court's decision to permit the closed circuit television testimony. Further, the child witnesses in this case testified under oath, were subject to full cross-examination, were able to be observed by the judge and appellant as they testified, and were able to observe appellant as they testified. Accordingly, appellant's constitutional right to confront his accusers was not compromised. See Self, 56 Ohio St.3d at 79. Appellant's first assignment of error is overruled.
In his second assignment of error, appellant contends that the trial court erred by incorrectly applying R.C. 2151.3511. Appellant argues that the trial court's failure to require Bobby and Josh, two child witnesses, as opposed to the two child victims named in the complaint, to testify in court and in his presence violated the provisions of R.C. 2151.3511.
This court has recently addressed the issue of whether a child who witnesses the sexual abuse of another child can be considered a "victim" in order to allow such witness to testify via closed circuit television. In re: Scott Tindle (Feb. 10, 1997), Butler App. No. CA96-08-151, unreported. In Tindle, we held that where there is sufficient evidence for the trial court to determine that a child witness would be unable to testify in the defendant's presence due to fear and the substantial likelihood of emotional trauma, such a witness is a "victim" within the meaning of R.C. 2151.3511 and allowing the testimony of such a witness to be televised from outside the courtroom would fulfill the purpose behind the statute. Id., citing In the Matter of: Chad Graves (Apr. 10, 1995), Clinton App. No. CA94-07-018, unreported at 10.
After carefully reviewing the record, we find sufficient evidence to support the trial court's decision to allow Bobby and Josh to testify by closed circuit television from outside the courtroom. Dr. Baker testified that a child who observes the sexual abuse of another child can have problems discussing their observations in front of the perpetrator. Furthermore, Josh and Bobby testified that they were afraid of appellant and had been threatened by Casey, who was "taking up" for himself and appellant. Moreover, Bobby specifically testified that appellant had threatened him. Therefore, based upon our analysis in Tindle, appellant's second assignment of error is overruled.
In his third assignment of error, appellant contends that the trial court erred by overruling his motion to suppress. Appellant argues that his due process rights were violated when he was interrogated by police because he was separated from his mother at critical junctures, his confession contains multiple rewrites in the margin which correspond to the elements of the charged crimes, the interrogation lasted for three to four hours, an officer bet appellant that his confession contained mistakes, and the interrogation involved a series of lie detector tests.
An appellate court may not disturb a trial court's decision on a motion to suppress where it is supported by substantial, credible evidence. Maumee v. Johnson (1993), 90 Ohio App.3d 169,171; State v. Emerson (Mar. 6, 1995), Clermont App. No. CA94-11-093, unreported. A trial court serves as the trier of fact in a suppression hearing and must weigh the evidence and judge the credibility of witnesses. State v. Fanning (1982),1 Ohio St.3d 19, 20. When reviewing a trial court's decision on a motion to suppress, an appellate court accepts the trial court's factual findings, relies upon the trial court's ability to assess the credibility of witnesses, and independently determines "without deference to the trial court, whether the court has applied the appropriate legal standard." State v. Anderson (1995), 100 Ohio App.3d 688, 691.
In order to determine whether a confession given by a juvenile is voluntary, "the court should consider the totality of the circumstances, including the age, mentality and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; and the existence of physical deprivation or inducement." In re Watson (1989), 47 Ohio St.3d 86, paragraph one of the syllabus, certiorari denied (1990), 495 U.S. 937,110 S.Ct. 2185, citing State v. Edwards (1976), 49 Ohio St.2d 31,40-41. A juvenile's confession is not rendered involuntary where the juvenile does not have either a parent or an attorney present. Watson at 89.
Detective Dwight Johnson, an Oxford police officer, testified that on May 27, 1996, appellant and his mother arrived at the Oxford police station at approximately 11:00 a.m. Johnson testified that he escorted appellant and his mother to a conference room where he read the Miranda rights to appellant. Johnson stated that after reading the Miranda rights, appellant and his mother both signed the Miranda rights waiver card. Johnson stated that appellant's mother was present during the appellant's initial interview. According to Johnson, during the initial interview, appellant denied any involvement in the sexual abuse allegations.
Johnson stated that he informed appellant that he did not believe that appellant was being completely truthful and that he asked appellant if he would submit to a Computer Voice Stress Analyzer ("CVSA") test. Johnson testified that appellant and his mother agreed that appellant would take the CVSA test. Appellant was then taken to another room where the CVSA is located and introduced to Sergeant Daniel Umstead who conducted the CVSA test. Appellant's mother was not present during the CVSA test.
Johnson stated that after the CVSA test was concluded, he and Umstead talked with appellant and that appellant then offered a written statement on a form which contains the Miranda warnings. Johnson stated that appellant's statement indicated that he had touched Katie and Tiffany. Johnson testified that he read through appellant's statement and then had appellant clarify a few areas that were unclear.[3]
Johnson stated that during the interrogation process, appellant was not under arrest, was not handcuffed, and was free to go at any time. Johnson stated that appellant appeared to understand the procedure, answered all the questions that were asked of him, did not hesitate in what he said, was not shaking, and did not appear to be nervous, as his voice did not fluctuate when he spoke with the officers.
According to Johnson, the entire interrogation process concluded at approximately 3:30 p.m., approximately four hours after appellant and his mother arrived at the police station. Johnson stated that appellant was offered the restroom and water. Johnson indicated that he may have "bet" appellant a cola that he had made some mistakes in his written confession, but Johnson also indicated that he would not have offered to buy appellant a cola or anything else in exchange for appellant making changes to his statement. Johnson testified that appellant never made any request to have his mother present following the initial interview.
Sergeant Daniel Umstead, an Oxford police officer, testified that he performed a CVSA test on appellant on May 27, 1996. Umstead testified that prior to performing the CVSA test, he had appellant read, and he read to appellant, a consent form which advised appellant of his rights and that appellant signed the form. Umstead testified that during the testing, appellant made some admissions and he took a break to talk with Johnson and appellant's mother because it was apparent that appellant was not being totally truthful. Umstead stated that he, Johnson, and appellant's mother discussed the possibility of having appellant's mother sit with appellant during the remainder of the testing, but that they all agreed that the testing should continue without appellant's mother because appellant may not be willing to openly discuss the situation in his mother's presence.
Umstead stated that he performed three CVSA tests upon appellant during a period of thirty minutes to an hour. Umstead stated that appellant appeared to understand what was going on. Umstead stated that appellant was calm and "[p]retty matter of fact." Umstead testified that he does not recall appellant expressing a desire to have his mother present during either the CVSA tests or the execution of the written confession.
Patricia Rose, appellant's mother, testified that she took appellant to the Oxford police station on May 27, 1996. Rose stated that Johnson escorted her and appellant to a conference room where he read appellant his rights. Rose stated that she and appellant executed a Miranda rights waiver. Rose testified that she understood that she could have an attorney present but did not feel that she needed one at that time. Rose testified that she did not object to the CVSA test. Rose stated that while appellant was taking the CVSA test, she asked if she could see appellant, but she was not permitted to see him at that time. Rose also indicated that appellant had been questioned by the police prior to the May 27, 1996 questioning on an unrelated matter and that he was vaguely familiar with the questioning process.
Appellant testified that when he arrived at the Oxford police station on May 27, 1996, he was nervous. Appellant stated that when Johnson read the Miranda rights to him, he was given a card to read along with Johnson and that he read part of the card along with Johnson. After Johnson read the rights to appellant and asked him if he understood, appellant stated that he nodded his head affirmatively. Appellant stated that he signed the waiver card because he was nervous and afraid. Appellant testified that during the three to four hour interrogation process, he never received a restroom break although he did not ask for one. Appellant stated that he did receive a drink when he was writing his confession.
Appellant testified that before he began the CVSA test, he requested his mother's presence but was told that she could not be present. Appellant also testified that he asked for his mother when he began to complete his written statement, but was told that his mother could not be present at that time either. Appellant stated that after Johnson read his confession, Johnson told him to write certain words on it. Appellant stated that he wrote the words as requested by Johnson, because he was afraid that he was going to go to jail if he did not do what Johnson told him to do. Appellant also indicated that while he had been questioned by the police on a previous occasion, he really does not understand the questioning procedure.
The trial court overruled appellant's motion to suppress, finding that appellant's statement was knowing and voluntary. The court found that appellant understood the Miranda warnings and had no right to have his mother present during any stage of the interrogation, although her presence during the initial interview and questioning was a courtesy to appellant. The court found that appellant and his mother consented to the CVSA procedure and that "it was not surprising that [appellant] would start talking a little bit more without his mother" present. The trial court found that there was no police coercion and that the police handled the situation with "kid gloves."
Based upon a review of the testimony presented at the suppression hearing, we conclude that under the totality of the circumstances the trial court did not err in determining that the statement given by appellant was voluntary. See Watson, 47 Ohio St.3d at paragraph one of the syllabus. Appellant had no right to have his mother present at any stage of the interrogation process, the interrogation process was not unreasonably lengthy or intense, the confession was clarified, not rewritten, and appellant voluntarily, and with his mother's approval, submitted to the CVSA tests. Accordingly, we find that the trial court did not err in overruling appellant's motion to suppress. See Maumee,90 Ohio App.3d at 171. Appellant's third assignment of error is overruled.
In his fourth assignment of error, appellant contends that his conviction of felonious sexual penetration upon Tiffany was against the manifest weight of the evidence because his first confession draft, his trial testimony, and Tiffany's trial testimony fail to establish vaginal penetration.
When reviewing a manifest weight claim, an appellate court is required to view the evidence in a light most favorable to the prosecution and to decide "whether any reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, 273. See, also, State v. Eley (1978), 56 Ohio St.2d 169, 172. Thus, we must determine whether there is substantial evidence contained in the record from which the trial court "could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." State v. Eskridge (1988), 38 Ohio St.3d 56, 59.
Appellant was convicted of a sexual act upon Tiffany which, if committed by an adult, would constitute felonious sexual penetration in violation of R.C. 2907.12. R.C. 2907.12 provides, in relevant part:
 (A)(1) No person, without privilege to do so, shall insert any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another who is not the spouse of the offender * * *, when any of the following applies:
* * *
 (b) The other person is less than thirteen years of age * * *.
Christopher Caudill testified that he observed appellant place "his finger in Tiffany's private." Tiffany testified that appellant has touched her "private part" with his hand. Tiffany also testified that appellant touched her on the outside of her shorts and panties. Bobby Caudill testified that appellant "hunched" Tiffany and that appellant's pants were off and Tiffany's pants were partially down.
Detective Johnson testified that appellant represented to him during his confession that he had inserted a finger into Tiffany. In his confession, appellant indicated that he inserted his finger into Tiffany's vagina. However, at the adjudication hearing, appellant testified that he wrestled with Tiffany and placed his hand over her clothes on her vaginal area, but he did not place his finger into her vagina.
Based upon a careful review of the record before us, we find that the state presented sufficient, credible evidence which would allow a reasonable trier of fact to conclude that appellant was guilty of felonious sexual penetration upon Tiffany. See Jenks, 61 Ohio St.3d at 273. Appellant's fourth assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and KOEHLER, J., concur.
[1] Following questions concerning her competency to testify, Katie was unable to continue with questioning and was excused.
[2] The record does not contain a transcript of the pre-trial referred to by the trial court.
[3] For instance, Johnson stated that when he read appellant's statement, appellant had written that he touched Katie and Tiffany with "it." Johnson asked appellant what "it" referred to and appellant told him that "it" meant "his penis." Johnson informed appellant that he needed to write "penis" on the statement so that it would be clear. Johnson stated that he went through appellant's statement with him in the same fashion, so as to clarify any unclear words, phrases, or statements.