[Cite as *In re M.D.*, 2012-Ohio-31.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| M.D. AND B.D. | : | Hon. John W. Wise, J. |
|  | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | Case No. 2011-CA-9 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING: Civil appeal from the Knox County Court of Common Pleas, Juvenile Division, Case Nos. 210435 and 210436

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: January 5, 2012

APPEARANCES:

JOHN C. THATCHER
Knox County Prosecuting Attorney
117 E. High St., Ste. 234
Mount Vernon, OH 43050

D. DERK DEMAREE
112 North Main Street
Box 766
Mount Vernon, OH 43050

*Gwin, P.J.*

{1} Appellants M.D. and B.D. minors, appeal a judgment of the Court of Common Pleas, Juvenile Division, of Knox County, Ohio, which found them to be delinquent by reason of having committed Felonious Assault, in violation of R.C. 2903.11(A)(1) a felony of the second degree if committed by an adult and Gross Sexual Imposition in violation of R.C. 2907.05(A)(1) a felony of the fourth degree if commuted by an adult.

{2} Appellants assign five errors to the trial court:

{3} "I. THE APPELLANTS WERE DENIED DUE PROCESS AND A FAIR TRIAL WHEN THE TRIAL COURT ADMITTED UNDULY SUGGESTIVE AND UNRELIABLE PRETRIAL IDENTIFICATION EVIDENCE AND AN UNRELIABLE IN-COURT IDENTIFICATION OF THE APPELLANTS.

{4} "II. THE APPELLANTS WERE DENIED DUE PROCESS AND A FAIR TRIAL WHEN THE TRIAL COURT DID NOT ORDER AN ACQUITTAL OF ALL CHARGES AT THE END OF THE STATE'S CASE OR IN ITS ADJUDICATION AS THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION.

{5} "III. THE APPELLANTS WERE DENIED DUE PROCESS AND FAIR TRIAL WHEN THEIR ADJUDICATIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{6} "IV. THE APPELLANTS WERE DENIED DUE PROCESS AND A FAIR TRIAL WHEN THE TRIAL COURT DENIED THE APPELLANTS A PHYSICAL FACE-TO-FACE CONFRONTATION WITH THEIR ACCUSER AND ORDERED THEIR REMOVAL FROM THE COURTROOM DURING TESTIMONY.

**{7}** "V. THE TRIAL COURT VIOLATED THE APPELLANTS DUE PROCESS AND EQUAL PROTECTION RIGHTS WHEN IT FAILED TO MERGE ALLIED OFFENSES OF SIMILAR IMPORT."

**{8}** On October 27, 2010, Complaints were filed in the Knox County Court of Common Pleas, Juvenile Division, charging B.D. and M.D.[1] with one count of Rape, in violation of the R.C. 2907.02(A)(2), a felony of the first degree if committed by an adult, one count of Gross Sexual Imposition (hereinafter "G.S.I."), in violation of R.C. 2907.05(A)(1), a felony of the fourth degree if committed by an adult, and one count of Felonious Assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree if committed by an adult.

**{9}** On January 26 and 27, 2011, this matter proceeded to Adjudication before the Juvenile Judge for Knox County, Ohio. The following facts were established during the hearing.

**{10}** On March 13, 2010, appellants attended a birthday party that was given for the brother of the Complaining Witness (hereinafter "C.W.")[2] and held at C.W.'s home. Approximately 45 people attended. C.W. was 5 years old and appellants were 11 and 12 years old, respectively, at the time of the birthday party.

**{11}** On March 15, 2010, the mother of C.W. noticed two "very thin scabs" on C.W.'s nipple areas while giving C.W. a bath. C.W. was reluctant to give an explanation to her mother about how or when the injuries had occurred even after persistent questioning by her mother.

---

[1] M.D. and B.D. are brothers.
[2] See, Sup.R. 45(D). To protect the identity of the victim, the designation C.W. will be used in place of her initials.

**{12}** On March 16, 2010, C.W.'s mother called Dr. Fiuerma, a psychologist. The next day, the doctor's secretary called back and told C.W.'s mother to take the child to the Emergency Room at the hospital.

**{13}** On March 18, 2010, C.W. was taken to Knox Community Hospital and examined by Jeanne Morgan, a Sexual Assault Nurse Examiner (SANE nurse). Based, in part, upon an interpretation of gestures made by C.W., the SANE nurse believed C.W. might have been touched and/or digitally penetrated vaginally with hand/fingers in addition to the two pencil-dot sized scabs to the chest area. There were no physical findings regarding penetration of the vagina. The SANE nurse used a colposcope (magnifying camera) to take pictures of the two wounds on the chest in order to see them better due to their small size.

**{14}** On March 19, 2010, Carrie Huffman, a Knox County Job & Family Services (hereinafter KCJFS) investigator interviewed C.W.

**{15}** C.W.'s initial physical description of her attackers did not match the physical description of the appellants. Further C.W. told her parents that her friend M.G. had come to her aid during the attack.[3] M.G. could not give any type of description of the boys. The parents of C.W. attempted to speak with M.G. at school. The school's principal Martha Downs informed C.W.'s parents that they could not question M.G. without her parents' permission. Ms. Downs then facilitated a meeting between M.G.'s parents and C.W.'s parents at the school on March 16, 2010. For months, neither C.W. nor M.G. could identify either appellant as an assailant.

**{16}** Detective Tom Bumpus of the Knox County Sheriff's Office was assigned to the investigation. Detective Bumpus told Ms. Huffman to have the parents of C.W. develop pictures from the birthday party and show them to C.W. to identify who assaulted her. In May

---

[3] M.G. was five years old at the time of the birthday party.

2010, the parents had C.W. circle with an orange marker those boys who assaulted her. C.W.'s mother testified that she told C.W. "to show me who did that to her", "show me"; "identify the guys who did that to her", "identify the persons." C.W. circled five or more different boys on the birthday pictures as her attackers. The parents of C.W. then gave the pictures to Ms. Huffman.

{17}    The same pictures with boys circled with orange marker were then given to M.G. so she could circle boys using a red marker. Between the two girls appellant B.D. and another boy, B.R. were circled on four different pictures. Another boy, J.E. was circled on five pictures. In total eight boys were circled as the assailants. Additionally, a ninth boy was accused by C.W. at the school playground. Ms. Huffman gave the birthday party pictures with the "common" circling by C.W. and M.G. of appellant B.D. to Detective Bumpus on May 17, 2010.

{18}    Detective Bumpus testified he was "not satisfied" with the identification by C.W. through use of the birthday party pictures. He further testified that the identification process used by M.G. where the parents used the pictures that C.W. had previously marked was suggestive. Ms. Huffman agreed that the procedure "could be" suggestive. While "not satisfied' with the birthday picture identification, Detective Bumpus nevertheless decided that appellant B.D. was an assailant because his picture had been circled by both C.W. and M.G. C.W. left for vacation in Mexico in late May. M.G. and her family vacationed in Michigan from the end of June through the second week in August.

{19}    The decision was made by Detective Bumpus to use the school yearbook as a second mode of picture identification based upon the problems with the birthday picture

identification. Detective Bumpus testified that he gave instruction concerning the use of the school yearbook to both families during summer vacation in July and August 2010.

{20}    Detective Bumpus first interviewed appellant B.D. in July 2010. Detective Bumpus told B.D. that he was investigating the assault of a five-year-old girl at the birthday party. Appellant B.D. denied any wrongdoing. He claimed that he was coloring with colored pencils he had received in a gift bag given at the party and watching a movie. Detective Bumpus' subsequent investigation revealed that no pencils were given out in the gift bags given out at the birthday party.

{21}    Detective Bumpus spoke with appellant B.D. a second time in August 2010. At this time, he was told he was accused of piercing the nipples of C.W. and putting his finger inside her vagina. Appellant B.D. told Detective Bumpus that six boys were in the room when the younger girls came into the room. The boys did not want the younger girls in the room so they began throwing pencils at the girls. He named J.E. and T.B. as two boys who had poked C.W. in the chest with pencils. When asked by Detective Bumpus why he had not revealed this information during his first interview, appellant B.D. stated he had forgot. However, the next day appellant's father called Detective Bumpus to inform him that appellant B.D. had lied about the other boys throwing pencils and poking C.W. in the chest with pencils. Detective Bumpus' interviews with the boys who had been accused did not reveal any information concerning who or how C.W. had been injured.

{22}    C.W. testified that she was poked by a pencil while being fully clothed and over the clothing. She testified she was not touched with a hand or fingers. She further testified that the boys told her not to tell. At trial, M.G. testified that she did not witness any acts.

**{23}** At trial appellant B.D. admitted that he had lied to Detective Bumpus when he had implicated the other boys at the party because he "panicked." Appellant B.D. and appellant M.D. each testified that he was not involved in the attack upon the C.W. Neither had any idea how she received her injuries or who was responsible for inflicting them.

**{24}** On February 4, 2011, the Judge adjudicated the appellants as delinquent children regarding the Felonious Assault and G.S.I. charges. The Judge found insufficient evidence concerning the rape charge.

**{25}** On May 9, 2011, the Court held a Dispositional Hearing. The Court ordered a suspended commitment of both appellants to the Ohio Department of Youth Services for an indefinite period of a minimum of six (6) months and a maximum period not to exceed age 21 regarding the G.S.I. adjudication and a suspended commitment of both appellants for an indefinite period of a minimum of one (1) year and a maximum period not to exceed age 21 regarding the Felonious Assault adjudication. The Judge further ordered 90 days in detention to be served by both appellants with 70 days being suspended, probation, counseling and various court costs.

**{26}** Appellants timely filed a Notice of Appeal.

I.

**{27}** On the first day of trial, the Prosecutor provided defense counsel a stack of photographs that included the pictures and yearbook used in the identification process. Defense counsel objected to their admission based upon a Crim.R. 16 Discovery Violation.[4] The Prosecutor acknowledged the Discovery Violation; however, he argued that the violation did not hamper the Defense. The Judge noted the objection

---

[4] We note that defense counsel did not file a Motion to Suppress the Identification due to receiving the photographs immediately prior to the start of trial.

and admitted the photos and yearbook along with related testimony given during the trial.

**{28}** In their First Assignment of Error, appellants argue the photographs from the birthday party and the school yearbook should not have been admitted at trial because the identification was unduly suggestive.

**{29}** Due process requires suppression of pre-trial identification of a suspect only if the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 196–97, 93 S.Ct. 375, 34 L.Ed.2d 401(1972). To establish a due process violation, a defendant must prove that the out-of-court confrontation was unnecessarily suggestive and conducive to irreparable mistaken identification. *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199(1967). However, even where the identification procedure is suggestive, so long as the challenged identification itself is reliable, it is still admissible. *State v. Moody*, 55 Ohio St. 2d 64, 377 N.E. 2d 1008 (1978). *See Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), ("reliability is the linchpin in determining the admissibility of identification testimony").

**{30}** Assuming, arguendo, the showing of the photographs of the birthday party and the school yearbook was unnecessarily suggestive, we find appellants were not prejudiced by the procedure because the trial judge noted, "I think it goes more to weight than it does to admissibility. I'm going to note your objection. I'm going to admit all 40 exhibits. However, I will state for the record I think there is little weight to be attached to Exhibits 4 through 12 for the State of Ohio." (T. at 240).

**{31}** Upon questioning by the prosecuting attorney, C.W. used the school yearbook in court to identify M.D. and B.D. to the Court. The trial court stated that this was among the evidence and testimony it found to be "very persuasive."

**{32}** The mother testified that the victim appeared tense and anxious when M.D. and B.D. were walking up the aisle collecting offerings at church. She also testified that there were two occasions when M.D. and B.D. had served as altar boys at mass, and that the victim was anxious and reluctant to go to the front of the church when the family took communion. In his testimony, appellant M.D. stated that he and appellant B.D. had "probably" collected offerings at church during that time that he and B.D. had served as altar boys. He further admitted that he had seen the victim at the altar rail. The trial court stated that according to the testimony, C.W. was visibly upset to the point where it was obvious to her parents. (Journal Entry, Feb. 4, 2011, at ¶4). "This kind of reaction to an unforeseen encounter is not likely to be faked of the product of coaching." Id. Further, the trial court found persuasive the fact that appellants were two of the four older boys to attend the birthday party.

**{33}** In examining the record to determine this issue, we may give weight to the fact that the error occurred in a trial to the court, rather than in a jury trial. *State v. White*, 15 Ohio St.2d 146, 151, 239 N.E.2d 65 (1968); *State v. Austin* (1976), 52 Ohio App.2d 59, 70, 368 N.E.2d 59 (1976). Indeed, a judge is presumed to consider only the relevant, material and competent evidence in arriving at a judgment, unless the contrary affirmatively appears from the record. *State v. White*, supra, 15 Ohio St.2d at page 151, 239 N.E.2d 65; *State v. Eubank*, 60 Ohio St.2d 183, 187, 398 N.E.2d 567, 569-570

(1979); *Columbus v. Guthmann*, 175 Ohio St. 282, 194 N.E.2d 143 (1963), paragraph three of the syllabus.

{34} The trial judge in a non-jury trial is able to observe the witnesses testify and can evaluate body language, voice inflection, and facial expressions. These are valuable tools for assessing credibility; tools that are not available to an appellate court working from the record alone. As such, a judge's assessment of credibility is entitled to considerable deference. See *Thompkins,* supra at 390. Although appellants denied they harmed the C.W., the judge must consider all of the evidence presented by the state as well as other defense witnesses in determining the validity of their denials.

{35} Upon our review of the complete record in the case at bar, we find that when all of this evidence is considered, the trial court had reliable evidence upon which to base its conclusion that B.D. and M.D. were the perpetrators of the acts alleged. Further the trial court did not err in admitting the birthday party photographs, the school yearbook or C.W.'s in-court identification testimony.

{36} Appellant's first assignment of error is overruled.

## II. & III.

{37} In their Second Assignment of Error, appellants argue that their convictions are based upon insufficient evidence. In their Third Assignment of Error, appellants contend that their convictions are against the manifest weight of the evidence. We disagree.

{38} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine

whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown* (2010), —— U.S. ——, 130 S.Ct. 665, 673, 175 L.Ed.2d 582 (reaffirming this standard); *State v. Fry,* 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017 at ¶ 146; *State v. Clay,* 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720 at ¶ 68

{39}   Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E .2d 541 (1997), superseded by constitutional amendment on other grounds as stated by *State v. Smith,* 80 Ohio St.3d 89, 684 N .E.2d 668, 1997–Ohio–355. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins,* supra, 78 Ohio St.3d at 387, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720–721. Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

{40}   R.C. 2903.11 which defines Felonious Assault provides that no person shall knowingly cause serious physical harm to another. In the case at bar, appellants

dispute their identification as the perpetrators, the mens rea element, and the serious physical harm element.

**{41}** Appellants' identification as the attackers was based upon sufficient evidence as discussed in our disposition of appellants' First Assignment of Error supra.

**{42}** R.C. 2901.22 defines "knowingly" as follows:

**{43}** "(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."

**{44}** Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Huff*, 145 Ohio App.3d 555, 563, 763 N.E.2d 695(2001). (Footnote omitted.) Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." *State v. McDaniel,* Montgomery App. No. 16221, 1998 WL 214606 (May 1, 1998), citing *State v. Elliott* (1995), 104 Ohio App.3d 812, 663 N.E.2d 412.

**{45}** In this case, C.W. testified that B.D. and M.D. poked her nipples with a pencil, that it hurt, and that she cried when it happened. In addition, SANE Nurse Jeanne Morgan testified that based upon her experience, the wounds on C.W.'s nipples has the appearance of a purposeful injury. This evidence, when viewed in a light most favorable to the prosecution, certainly forms a basis to find that B.D. and M.D. acted knowingly in inflicting injuries to the victim.

**{46}** "Serious physical harm to persons" as defined in R.C. 2901.01(A) (5) means any of the following in pertinent part:

**{47}** "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

**{48}** "(b) Any physical harm that carries a substantial risk of death;

**{49}** "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity."

**{50}** In addition to the testimony concerning the pain physical pain inflicted by the pencils, C.W.'s mother testified at trial that the C.W. had been in psychological counseling since March 18, 2010, until the time of trial in January 2011.

**{51}** The trier of fact could have reasonably concluded from the testimony that C.W. had suffered acute pain of such duration as to result in substantial suffering [R.C. 2901.01(A) (5) (e)] or a mental condition requiring prolonged psychiatric treatment [R.C. 2901.01(A)(5)(a)]. Accordingly, the State presented sufficient evidence that C.W. suffered "serious physical harm." R.C. 2901.01(A) (5).

**{52}** Appellants further contend that the evidence was insufficient to sustain a conviction for Gross Sexual Imposition.

**{53}** Gross Sexual Imposition prohibits "sexual contact" when the offender knows the other person is less than thirteen years of age. "Sexual Contact" is defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person". R.C. 2907.01. Accordingly, touching the "erogenous zone" is what is prohibited.

**{54}** Appellant argues the evidence failed to prove the "physical contact" was for sexual arousal or gratification that is necessary to establish "sexual contact." However, there is no requirement there be direct testimony regarding sexual arousal or gratification. *State v. Astley*, 36 Ohio App. 3d 247, 523 N.E. 2d 322 (1987); *State v. Cobb*, 81 Ohio App.3d 179, 610 N.E.2d 1009 (1991); *In Re Anderson*, 116 Ohio App.3d 441, 688 N.E.2d 545; *State v. Brady*, Stark App. No.2000CA00223, 2001 WL 815574 (July 9, 2001).

**{55}** In the absence of direct testimony regarding sexual arousal or gratification, the trier of fact may infer appellants were motivated by desires for sexual arousal or gratification from the "type, nature and circumstances of the contact, along with the personality of the defendant." *State v. Cobb* (1991), 81 Ohio App.3d at 185, 610 N.E.2d 1009 (1991); *State v. Brady,* supra.

**{56}** Based upon the testimonial evidence set forth above, the only evidence of physical contact occurred with C.W.'s breasts and genitals; she did not testify that the boys touched any other art of her body. Accordingly, we find there is substantial credible evidence from which the trier-of-fact could find all the elements of sexual imposition have been met.

**{57}** Accordingly, appellants' adjudication for felonious assault and gross sexual imposition are neither against the manifest weight nor against sufficiency of the evidence.

**{58}** Appellants' Second and Third Assignments of Error are overruled.

IV.

**{59}** In their Fourth Assignment of Error, appellants argues that their right to confrontation under the Sixth Amendment to the United States Constitution and Ohio Constitution Article I, Section 10 was violated when the trial court permitted C.W. to testify at trial by two-way closed-circuit television. Specifically, appellants argues that the trial court's failure to enter case-specific findings of fact that C.W. would experience significant trauma if she were required to testify in court in appellants' presence, prior to allowing her out-of-court testimony by closed circuit television, violated their right to confront their accusers. We disagree.

**{60}** Ohio's juvenile statutes contain specific provisions allowing children who are the victims of kidnapping and/or certain sex offenses to testify through a videotaped deposition or remote videoconferencing. R.C. 2152.81. To be eligible to use this statute, the state must show that the victim was less than 13 years old when the complaint was filed, and was the victim of a violation of certain statutes, which include R.C. 2907.02 (Rape) and R.C. 2907.05 (Gross Sexual Imposition). R.C. 2152.81(A). In this case, the victim was five years old at the time of the complaint, and the complaint alleged violations of both the Rape and Gross Sexual Imposition statutes.

**{61}** The statute states, in pertinent part:

**{62}** In any proceeding in juvenile court involving a complaint, indictment or information in which a child is charged with a violation of section . . . 2907.02, . . . 2907.05, . . . of the Revised Code or an act that would be an offense of violence if committed by an adult and in which an alleged victim of the violation or act was a child who was less than thirteen years of age when the complaint was filed or the indictment

was returned, the juvenile judge, upon motion of an attorney for the prosecution, shall order that the testimony of the child victim be taken by deposition. The prosecution also may request that the deposition be videotaped in accordance with division (A)(3) of this section." R.C. 2152.81(A)(2).

{63} Division (A)(3) further states: "If the prosecution requests that a deposition to be taken under division (A)(2) of this section be videotaped, the juvenile judge shall order that the deposition be videotaped in accordance with this division."

{64} In this case, the state filed a motion requesting both a deposition under division (A)(2), and that the deposition be videotaped under division (A)(3).

{65} R.C. 2152.81(A)(3) further provides in relevant part,

{66} "If a juvenile judge issues an order to video tape the deposition, the judge shall exclude from the room in which the deposition is to be taken every person except the child victim giving the testimony, the judge, one or more interpreters if needed, the attorneys for the prosecution and the child who is charged with the violation or act, any person needed to operate the equipment to be used, one person chosen by the child victim giving the deposition, and any person whose presence the judge determines would contribute to the welfare and well-being of the child victim giving the deposition…. The child who is charged with the violation or act shall be permitted to observe and hear the testimony of the child victim giving the deposition on a monitor, shall be provided with an electronic means of immediate communication with the attorney of the child who is charged with the violation or act during the testimony, and shall be restricted to a location from which the child who is charged with the violation or act cannot be seen or heard by the child victim giving the deposition, except on a monitor provided for that

purpose. The child victim giving the deposition shall be provided with a monitor on which the child victim can observe, while giving testimony, the child who is charged with the violation or act. The judge, at the judge's discretion, may preside at the deposition by electronic means from outside the room in which the deposition is to be taken; if the judge presides by electronic means, the judge shall be provided with monitors on which the judge can see each person in the room in which the deposition is to be taken and with an electronic means of communication with each person in that room, and each person in the room shall be provided with a monitor on which that person can see the judge and with an electronic means of communication with the judge….

{67}    "* * *

{68}    "(B)(1) At any proceeding in relation to which a deposition was taken under division (A) of this section, the deposition or a part of it is admissible in evidence upon motion of the prosecution if the testimony in the deposition or the part to be admitted is not excluded by the hearsay rule and if the deposition or the part to be admitted otherwise is admissible under the Rules of Evidence. For purposes of this division, testimony is not excluded by the hearsay rule if the testimony is not hearsay under Evidence Rule 801; if the testimony is within an exception to the hearsay rule set forth in Evidence Rule 803; if the child victim who gave the testimony is unavailable as a witness, as defined in Evidence Rule 804, and the testimony is admissible under that rule; or if both of the following apply:

{69}    "(a) The child who is charged with the violation or act had an opportunity and similar motive at the time of the taking of the deposition to develop the testimony by direct, cross, or redirect examination.

**{70}** "(b) The judge determines that there is reasonable cause to believe that, if the child victim who gave the testimony in the deposition were to testify in person at the proceeding, the child victim would experience serious emotional trauma as a result of the child victim's participation at the proceeding.

**{71}** "(2) Objections to receiving in evidence a deposition or a part of it under division (B) of this section shall be made as provided in civil actions.

**{72}** "* * *"

**{73}** The Court granted the prosecutor's motion to take the deposition of C.W. over defense counsel's objection. (Journal Entry, Jan. 2011). However, the deposition did not take place. Rather it appears from the record before this Court that at some point before or during trial, the Juvenile Court, *sua sponte,* converted the video deposition to remote videoconference testimony. (1T. at 206-207). Appellants did not object to the trial court's ruling separating them from the room in which C.W. testified, nor the presentation of C.W.'s testimony by two-way closed-circuit television. (Id.).[5]

**{74}** As the United States Supreme Court recently observed in *Puckett v. United States*, 556 U.S. 129, 129 S.Ct. 1423, 1428, 173 L.Ed.2d 266, (2009) "If an error is not properly preserved, appellate-court authority to remedy the error (by reversing the judgment, for example, or ordering a new trial) is strictly circumscribed. There is good reason for this; 'anyone familiar with the work of courts understands that errors are a constant in the trial process, that most do not much matter, and that a reflexive inclination by appellate courts to reverse because of unpreserved error would be fatal.'"

---

[5] Nor did appellants object to closed circuit testimony from M.G. the minor female who was alleged to have witnessed at least a portion of the attack. (1T. at 186).

129 S.Ct 1423, quoting *United States v. Padilla,* 415 F.3d 211, 224 (C.A.1 2005) (en banc) (Boudin, C. J., concurring).

**{75}**   "[A]n appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an 'error'; (2) the error is 'clear or obvious, rather than subject to reasonable dispute'; (3) the error 'affected the appellant's substantial rights, which in the ordinary case means' it 'affected the outcome of the district court proceedings'; and (4) 'the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings'." *United States v. Marcus* (May 24, 2010), 560 U.S. __, 130 S.Ct. 2159, 176 L.Ed.2d 1012 quoting *Puckett,* supra 129 S.Ct. at 1429.

**{76}**   The Ohio Supreme Court has previously held that "'if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other constitiona[l] errors that may have occurred are subject to harmless-error analysis.'" *State v. Hill* (2001), 92 Ohio St.3d 191, 197, 749 N.E.2d 274, quoting *Rose v. Clark* (1986), 478 U.S. 570, 579, 106 S.Ct. 3101, 92 L.Ed.2d 460. Moreover, as we stated in *State v. Perry,* 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, "[c]onsistent with the presumption that errors are not 'structural,' the United States Supreme Court 'ha[s] found an error to be "structural," and thus subject to automatic reversal, only in a "very limited class of cases." *Johnson v. United States,* 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (citing *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (complete denial of counsel)); *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (biased trial judge); *Vasquez v. Hillery,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (racial discrimination in selection of

grand jury); *McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (denial *392 of self-representation at trial); *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (denial of public trial); *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (defective reasonable-doubt instruction).'" *Perry,* 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 18, quoting *Neder v. United States* (1999), 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35." *State v. Wamsley* 117 Ohio St.3d 388, 391-392, 2008-Ohio-1195, 884 N.E.2d 45, 48- 49 (2008).

{77} R.C. 2152.81 provides for the testimony of a child sex offense victim by closed circuit television. The statute provides,

{78} "(C) In any proceeding in juvenile court involving a complaint, indictment, or information in which a child is charged with a violation listed in division (A)(2) of this section or an act that would be an offense of violence if committed by an adult and in which an alleged victim of the violation or offense was a child who was less than thirteen years of age when the complaint or information was filed or indictment was returned, the prosecution may file a motion with the juvenile judge requesting the judge to order the testimony of the child victim to be taken in a room other than the room in which the proceeding is being conducted and be televised, by closed circuit equipment, into the room in which the proceeding is being conducted to be viewed by the child who is charged with the violation or act and any other persons who are not permitted in the room in which the testimony is to be taken but who would have been present during the testimony of the child victim had it been given in the room in which the proceeding is being conducted. Except for good cause shown, the prosecution shall file a motion under this division at least seven days before the date of the proceeding. The juvenile

judge may issue the order upon the motion of the prosecution filed under this division, if the judge determines that the child victim is unavailable to testify in the room in which the proceeding is being conducted in the physical presence of the child charged with the violation or act, due to one or more of the reasons set forth in division (E) of this section.

{79}    "* * *"

{80}    The statute further provides the ground upon which the trial court can exclude the child who is charged with the violation or act from the room in which the child victim gives testimony,

{81}    "(E) For purposes of divisions (C) and (D) of this section, a juvenile judge may order the testimony of a child victim to be taken outside of the room in which a proceeding is being conducted if the judge determines that the child victim is unavailable to testify in the room in the physical presence of the child charged with the violation or act due to one or more of the following circumstances:

{82}    "(1) The persistent refusal of the child victim to testify despite judicial requests to do so;

{83}    "(2) The inability of the child victim to communicate about the alleged violation or offense because of extreme fear, failure of memory, or another similar reason;

{84}    "(3) The substantial likelihood that the child victim will suffer serious emotional trauma from so testifying.

{85}    "* * *"

**{86}** Finally, R.C. 2152.81 provides that the trial court enter into the record its decision and the reasons supporting its decision for excluding the child who is charged with the violation or act from the room in which the child victim gives testimony,

**{87}** "(F)* * *

**{88}** "(2) A juvenile judge who makes any determination regarding the admissibility of a deposition under divisions (A) and (B) of this section, the videotaping of a deposition under division (A)(3) of this section, or the taking of testimony outside of the room in which a proceeding is being conducted under division (C) or (D) of this section, shall enter the determination and findings on the record in the proceeding."

**{89}** The parties in the case at bar concede that the trial judge did not enter the findings required by R.C. 2152.81(F)(2) into the record of this case.

**{90}** In this assignment of error, appellants argues that the trial court's failure to enter case-specific findings of fact that C.W. would experience significant trauma if she were required to testify in court in appellants' presence, prior to allowing her out-of-court testimony by closed circuit television, violated their right to confront their accusers.

**{91}** The Sixth Amendment to the United States Constitution provides, "[I]n all criminal prosecutions the accused shall enjoy the right * * * to be confronted with the witnesses against him." The Ohio Constitution, Article I, Section 10 likewise provides, "[T]he party accused shall be allowed * * * to meet the witnesses face to face * * *." Typically, this means that witnesses who testify against a defendant in a criminal proceeding must personally appear at the defendant's trial.

**{92}** In *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), the Court upheld a Maryland closed-circuit television statute and held that the

Confrontation Clause did not require a literal face-to-face confrontation in all instances. Id. at 849–850. The Court observed that the core purpose of the Confrontation Clause was to ensure rigorous adversarial testing of accusing witnesses. However, the face-to-face confrontation requirement is not absolute. A defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only, (1) where the denial of such confrontation is necessary to further an important public policy and (2) the reliability of the testimony is otherwise assured by the other elements of the confrontation right, "including testimony under oath, the opportunity for cross-examination, and the opportunity for the judge, jury, and the defendant to view the witness's demeanor as he or she testifies." Id. at 850–851, 110 S.Ct. 3157, 111 L.Ed.2d 666.

{93} In this case, the trial court implemented the two-way closed-circuit television procedure after all of the state's other witnesses had testified. Evidence from those witnesses indicated that C.W. was apprehensive and fearful around the appellants at school and at church. In addition, C.W.'s mother testified that C.W. was still in psychological counseling at the time of trial.

{94} In the case at bar, the trial court did not enter findings related to its determination that C.W. would be permitted to testify by two-way closed circuit television as required by R.C. 2152.82(F)(2). Therefore, the trial court erred.

{95} The defendant bears the burden of demonstrating that a plain error affected his substantial rights. *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *State v. Perry* (2004), 101 Ohio St.3d 118, 120, 802 N.E.2d 643, 646, 2004-Ohio-297. Even if the defendant satisfies this burden, an

appellate court has discretion to disregard the error. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240, 2002-Ohio-68 (2002); *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus; *Perry*, supra, at 118, 802 N.E.2d at 646. In the case at bar, appellants have failed in their burden to demonstrate that their substantial rights were violated.

{96} It is our belief that the trial court's error is harmless under the circumstances of this case. After carefully reviewing the record, we can find no evidence indicating that any of appellants' substantial rights were materially prejudiced by the trial court's failure to enter findings on the record. The record contains sufficient evidence to support the trial court's decision to permit the closed circuit television testimony. Further, the child witnesses in this case testified under oath, were subject to full cross-examination, were able to be observed by the judge and appellants as they testified, and were able to observe appellants as they testified. *In re Howard,* 119 Ohio App.3d 33, 40, 694 N.E.2d 488(1997).

{97} Accordingly, we find no plain error affecting appellants' substantial rights.

{98} Appellants' Fourth Assignment of Error is overruled.

V.

{99} In their Fifth Assignment of Error, appellants contend that the trial court committed plain error in imposing a disposition on allied offenses of similar import.

{100} In *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court revised its allied-offense jurisprudence. The *Johnson* court overruled *State v. Rance,* 85 Ohio St.3d 632, 710 N.E.2d 699, 1999-Ohio-291 "to the extent that it calls for a comparison of statutory elements solely in the abstract under

R.C. 2941.25." The Ohio Supreme Court established a new two-part test for determining whether offenses are allied offenses of similar import under R.C. 2941.25.

{101} The first inquiry focuses on whether it is possible to commit both offenses with the same conduct. Id. at ¶ 48, 710 N.E.2d 699. It is not necessary that the commission of one offense will *always* result in the commission of the other. Id. Rather, the question is whether it is *possible* for both offenses to be committed by the same conduct. Id*.,* quoting *State v. Blankenship,* 38 Ohio St.3d 116, 119, 526 N.E.2d 816 (1988). Conversely, if the commission of one offense will *never* result in the commission of the other, the offenses will not merge. *Johnson* at ¶ 51.

{102} If it is possible to commit both offenses with the same conduct, the court must next determine whether the offenses were in fact committed by a single act, performed with a single state of mind. Id. at ¶ 49, quoting *State v. Brown,* 119 Ohio St.3d 447, 895 N.E.2d 149, 2008-Ohio-4569, ¶50 (Lanzinger, J., concurring in judgment only). If so, the offenses are allied offenses of similar import and must be merged. *Johnson* at ¶ 50. On the other hand, if the offenses are committed separately or with a separate animus, the offenses will not merge. Id*.* at ¶ 51.

{103} Under *Johnson*, "the court need not perform any hypothetical or abstract comparison of the offenses at issue in order to conclude that the offenses are subject to merger." Id. at ¶ 47, 942 N.E. 2d 1061. Rather, the court simply must ask whether the defendant committed the offenses by the same conduct. Id.

{104} Appellants were convicted of gross sexual imposition in violation of R.C. 2907.05, which provides, in relevant part:

**{105}** "(A) No person shall have sexual contact with another, not the spouse of the offender * * * when any of the following applies:

**{106}** "(1) The offender purposely compels the other person * * * to submit by force or threat of force."

**{107}** "Sexual contact" is defined in R.C. 2907.01(B), as follows:

**{108}** "'Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

**{109}** Appellants were also convicted of felonious assault in violation of R.C. 2903.11, which provides in relevant part,

**{110}** "(A) No person shall knowingly do either of the following:

**{111}** "(1) Cause serious physical harm to another or to another's unborn.

**{112}** "* * *"

**{113}** In the case at bar, even if we were to find under the facts of this case it is possible to commit gross sexual imposition under R.C. 2907.05(A)(1) and felonious assault under R.C. 2903.11 with the same conduct, appellants' argument would never-the-less fail.

**{114}** Under *Johnson* we must determine whether appellants in fact committed both offenses by way of a single act, performed with a single state of mind, or whether they had separate animus for each offense. *Johnson,* 2010-Ohio-6314 at ¶ 49, 51; R.C. 2941.25(B).

**{115}** The record in the case at bar reflects that the state presented evidence at trial demonstrating that appellants committed two separate acts. The trial court found

that the poking of C.W.'s breasts with a pencil and the touching of her genital area were separate acts committed with separate animus.

{116} Based on the foregoing, the record reflects that the state presented evidence at trial demonstrating that appellants committed two separate acts. Accordingly, the state did not rely on the same conduct to prove two offenses. Appellant's convictions did not originate from a single act; therefore, even if R.C. 2941.25(A) were to be applied in the case at bar, the trial court did not err in sentencing appellants for each offense.

{117} Appellants' Fifth Assignment of Error is overruled.

{118} For the foregoing reasons the judgment of the Knox County Court of Common Pleas, Juvenile Division, Ohio, is affirmed.

By Gwin, P.J.,

Wise, J., and

Delaney, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. JOHN W. WISE

_____
HON. PATRICIA A. DELANEY

[Cite as *In re M.D.*, 2012-Ohio-31.]

IN THE COURT OF APPEALS FOR KNOX COUNTY, OHIO

FIFTH APPELLATE DISTRICT


IN THE MATTER OF:
M.D. AND B.D.                                   :
                                                :
                                                :
                                                :
                                                :
                                                :
                                                :       JUDGMENT ENTRY
                                                :
                                                :
                                                :
                                                :
                                                :       CASE NO. 2011-CA-9


    For the reasons stated in our accompanying Memorandum-Opinion, the judgment of

the Knox County Court of Common Pleas, Juvenile Division, Ohio, is affirmed.  Costs to

appellants.



_____
HON. W. SCOTT GWIN


_____
HON. JOHN W. WISE


_____
HON. PATRICIA A. DELANEY